APRIL STRAUSS (SBN 163327)
april@nidellaw.com
CHRISTOPHER NIDEL (*pro hac vice forthcoming*)
chris@nidellaw.com
JONATHAN NACE (*pro hac vice forthcoming*)
jon@nidellaw.com
ZACHARY A. KELSAY (*pro hac vice forthcoming*)
zach@nidellaw.com
NIDEL & NACE, P.L.L.C.
One Church Street, Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KRISTINA BROWN and ASHLEY MROZ,<br><br>Plaintiffs,<br><br>v.<br><br>ARAKELIAN ENTERPRISES, INC. d/b/a ATHENS SERVICES, ATHENS DISPOSAL COMPANY, INC., UNIVERSAL WASTE SYSTEMS, INC., CALIFORNIA WASTE SERVICES, LLC, ORGANIC ENERGY SOLUTIONS, LLC, AMERICA'S RECYCLING COMPANY, INC., AMERICA'S RECYCLING COMPANY 2, INC., AMERICA'S RECYCLING COMPANY 3, INC., AMERICA'S RECYCLING COMPANY 4, INC., SEAN E. IRWIN, CAL-SPREADING, LLC, THE SHIN FAMILY TRUST, JUNG M. SHIN, KEVIN RIOS, NEW WEST TRACTOR, LLC, WPL HOLDINGS, LLC, and Does 1-10, inclusive.<br><br>Defendants. | Case No. 2:25-cv-2855<br><br><br><br>**COMPLAINT FOR DAMAGES**<br><br>**Jury Trial Demanded on All Cause Action So Triable** |

Plaintiffs, Kristina Brown and Ashley Mroz ("Plaintiffs") state as follows:

## NATURE OF THE CASE

1.    This is a citizen's suit, brought pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), to address violations of that law by Defendants.

2.    Six individual unoccupied fields in Kern, Los Angeles, and San Bernadino Counties (collectively the "Sites") are owned and/or operated by Defendants.  These Sites unlawfully receive solid waste and/or Construction and Demolition ("C&D") debris from co-Defendants which ship this waste to one or more of the Sites.

3.    None of the Sites are permitted to operate landfills nor have they taken any efforts to comply with state and federal restrictions on solid waste disposal. Defendants are disguising the disposal of C&D debris[1] and solid waste on these properties as "green waste" by unlawfully covering this waste with highly flammable wood chips and other organic waste.

4.    Defendants are violating 42 U.S.C. § 6972(a)(1)(B) of RCRA because they have contributed or are contributing to the past and present handling, storage, treatment, or disposal of solid waste that presents an imminent and substantial endangerment to health or the environment, namely:

- Unauthorized dumping of hazardous substances, including industrial and household waste.
- Contaminants from improperly managed waste are at risk of leaching into the soil and groundwater, threatening public water supplies.
- Release of harmful particulates and volatile organic compounds ("VOCs") into the air due to mismanagement of waste piles.
- Improper storage and disposal of flammable materials significantly increase the risk of fires, causing toxins, smoke and/or ash to spread to surrounding areas.

---

[1] The EPA defines C&D debris to include various types of waste, such as "roadwork material, excavated material, demolition waste, construction/renovation waste, and site clearance waste." 40 C.F.R. 257.2.

- Unlawful dumping has led to the destruction of habitats and poses risks to wildlife due to exposure to hazardous substances.
- Many violations occur near homes, creating direct exposure risks to vulnerable populations, including children.
- The Sites are operating without proper safeguards or permits, leading to uncontrolled waste management practices.
- Waste materials are being subjected to stormwater runoff, contributing to the risk of contamination of rivers, streams, and other water bodies.

5.    The Defendants must take immediate steps to cease this endangerment, including, but not limited to:

- Cease the handling, storage, treatment, transport and/or disposal of solid waste at the Sites in a manner that poses an imminent and substantial endangerment to health or the environment.
- Fully investigate and remediate contamination of surface waters from the Sites caused by past and present solid waste handling, treatment, storage, transport and disposal operations.
- Fully investigate and remediate contaminated groundwater below the Sites caused or contributed to by the Defendants' past and present solid waste handling, treatment, storage, and disposal operations, including but not limited to their failure to perform leachate and gas management.
- Fully investigate and remediate all contamination of residential drinking water wells in Kern, Los Angeles, and San Bernadino Counties, California, caused by the Defendants' past and present solid waste handling, treatment, storage, and disposal operations at the Sites.
- Fully investigate and remediate all contamination of soils, at, on, or near the Sites in Kern, Los Angeles, and San Bernadino Counties, California, caused by the Defendants' past and present solid waste handling, treatment, storage, and disposal operations at the Sites.
- Fully investigate and remediate all other contamination caused by emissions from the Sites into the environment.

6.    RCRA, Subtitle C covers hazardous waste while Subtitle D covers non-hazardous waste. Generally, all solid waste is considered nonhazardous and is not regulated under subtitle D. Subtitle D is implemented at the state and local levels with EPA guidance. The EPA sets criteria for the design and operation of disposal facilities, like landfills, where non-hazardous waste is stored or disposed of. While Subtitle D waste is not classified as

3

hazardous, improper disposal can lead to significant environmental harm, such as groundwater contamination, soil pollution, air quality issues from methane emissions, and increased risk of fires, especially in the case of improperly managed organic waste like flammable mulch.[2]

7.    RCRA defines the term "solid waste" as "any garbage, refuse… and other discarded material …"[3] While the statute does not define "discarded," the dictionary definition of discarded includes "disposed."[4] RCRA defines "disposal" to include "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste … on any land … so that such solid waste … may enter the environment or be emitted into the air …"[5] Under EPA's regulatory definition, a material is a "solid waste" for purposes of Subtitle C regulation if it is "accumulated [or] stored . . . before being . . . disposed of." A waste that meets this definition must necessarily also be a solid waste for purposes of RCRA's broader statutory definition under Subtitle D.

8.    Under section 4004(a) of RCRA, EPA has promulgated minimum criteria to differentiate "sanitary landfills," which may receive "solid waste," from "open dumps," which are prohibited from receiving solid waste.[6]

9.    RCRA defines an "open dump" to include any "site where solid waste is disposed of" if that site "is not a sanitary landfill which meets the criteria promulgated under section [4004]" and "is not a facility for disposal of hazardous waste."[7] Thus, except at permitted hazardous waste disposal facilities, any "solid waste management practice" that violates EPA's minimum criteria for sanitary landfills constitutes "open dumping."

---

[2] Franklin Assocs., *Characterization of Building-Related Construction and Demolition Debris in the United States*, prepared for the USEPA Municipal and Industrial Solid Waste Division Office of Solid Waste, June 1998.

[3] 42 USC 6903(27).

[4] Webster's Unabridged Dictionary 561 (2d ed. 2001).

[5] 42 U.S.C. § 6903(3).

[6] 42 U.S.C. §§ 6944(a), 6945(a); 40 C.F.R. §§ 257.1(a)(1) & (2).

[7] RCRA § 1004(13), 42 U.S.C. § 6903(13).

COMPLAINT

Section 4005(a) specifically authorizes citizen suits to enforce this open dumping ban.[8]

10.   The Sites are operating as open dumps in violation of Section 4005 of RCRA, 42 U.S.C. § 6945(a), because they are receiving solid waste without complying with regulations for non-hazardous and hazardous solid waste facilities under 40 C.F.R. §§ 257 and 258 including:

- Lacking a procedure for excluding hazardous wastes and polychlorinated biphenyls under 40 C.F.R. § 258.20.
- Failing to apply a 6-inch minimum cover of earthen material to prevent the spread of disease vectors, fire, odors, blowing litter, and scavenging under 40 C.F.R. § 258.21-.22 and 40 C.F.R. § 257.3-6.
- Failing to control public access, prevent unauthorized traffic and prevent unlawful dumping under 40 C.F.R. § 258.25 and 40 C.F.R. § 257.3-8(d).
- Lacking a method for recording, or controlling, explosive gases under 40 C.F.R. § 258.23 and 40 C.F.R. § 257.3-8.
- Causing the open burning of solid waste in violation of 40 C.F.R. § 258.24 and 40 C.F.R. § 257.3-7.
- Lacking composite liners, posing a hydrogeological threat to groundwater, including nearby aquifers under 40 C.F.R. § 258.40 and 40 C.F.R. § 257.3-4.
- Failing to contain surface waters without a method to prevent the discharge of pollutants and/or in violation of the requirements of the NPDES program under 40 C.F.R. § 257.3-3(a), 40 C.F.R. § 258.26, .27, .28, and 33 U.S.C. § 1342.
- Failing to monitor groundwater impacts under 40 C.F.R. § 258.50, .51, .53, .54.[9]
- Failing to maintain records of dumping, government inspection, certifications, testing, and financial assurance documentation under 40 C.F.R. § 258.29.

11.   Solid waste disposal facilities are regulated in California under 14 C.C.R. § 18100 *et seq*. ("Title 14") and 27 C.C.R. § 20005 *et seq*. ("Title 27"). Under California

---

[8] 42 U.S.C. § 6945(a), § 6972.

[9] The surface waters at several of these sites contain a visible sheen and smell of rotten eggs, an identifier of hydrogen sulfide, an Extremely Hazardous Substance, 73 FR 65462 § 355 App. A.

law, no person can store, process, or dispose of solid waste without a solid waste permit.[10] None of the Sites have a solid waste permit despite containing significant volumes of disposed solid waste.

12.    Title 14 allows the operation of "Agricultural Material Composting Operations" for the land application[11] of "green or agricultural material additives, and/or amendments."[12] However, all material being land-applied as a compost must be tested for contaminates and pathogens to ensure it does not contaminate the environment.[13] The Defendants are not testing every shipment of waste being dumped at the Sites.

13.    Additionally, green waste intended for agricultural purposes cannot contain more than 1% contamination of the total weight.[14] No amount of C&D waste can be used in land application because it is not included as a compostable material or digestate.[15] The Defendants have land-applied waste at the Sites with significantly more than 1% solid waste contamination and most of the Sites have land-applied C&D debris.

14.    None of the Sites comply with California's solid waste restrictions. These Sites threaten the air and water of the Noticing Parties and their community and pose an imminent and substantial endangerment to human health and the environment.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction by virtue of Section 7002 of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(A), and by virtue of 28 U.S.C. § 1331 (actions arising under the Constitution or laws of the United States).

16.    The relief requested is authorized pursuant to 28 U.S.C. § 2201-02 (power to issue declaratory relief in case of actual controversy and further necessary relief based on

---

[10] 14 CCR § 17400.

[11] "Land Application" refers to the practice of applying composted organic material, such as green waste, directly onto land as a means of soil amendment or nutrient enrichment.

[12] 14 CCR § 17852(a)(6).

[13] 14 CCR § 17868.3.

[14] 14 CCR § 17868.5(a).

[15] 14 CCR § 17852(a)(24.5).

COMPLAINT

such a declaration), 33 U.S.C. § 1319(b), 1365(a) (injunctive relief), 33 U.S.C. § 1319(d), 1365(a) (civil penalties), and 42 U.S.C. § 6972(a)(2), which provides:

> The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

17. Venue is appropriate in the Central District of California pursuant to 33 U.S.C. § 1365(c)(1) and because the acts, omissions, and/or violations complained of herein occurred, and continue to occur, within Los Angeles, Kern, and San Bernadino Counties, California.

## <u>NOTICE</u>

18. Plaintiffs have complied with the pre-suit notice provisions of RCRA.

19. Pursuant to 42 U.S.C. § 6972(b)(2), Plaintiffs, on December 3, 2024, gave Defendants notice of the violations alleged herein and their intent to sue after the expiration of ninety (90) days.

20. The notice identified the specific violations, the location(s) of the violations, and the persons responsible, in accordance with 40 C.F.R. § 254.3(a).

21. At the same time, Plaintiffs mailed a copy of the notice to the Administrator of the Environmental Protection Agency, the Regional Administrator of Region 9, the Secretary of the California Environmental Protection Agency, and California Solid Waste Management Agency ("CalRecycle").

22. Service of notice on Defendants was by certified mail return receipt requested.

23.     More than 90 days have passed since the Plaintiffs provided notice to the Defendants and these agencies.

24.     Since Plaintiffs gave notice, the violations complained of have not ceased and are ongoing. Neither the EPA nor the State of California has commenced or diligently prosecuted a civil or criminal enforcement action in a court of the United States or the State of California for these violations. Furthermore, prior to the notice, neither the EPA nor the State of California commenced and diligently prosecuted an administrative action under RCRA or HWCA.

25.     Neither the EPA nor the state has issued a final order not subject to judicial review and Defendants have not paid any penalties associated with their violations.

26.     Several other parties identified in Plaintiffs' Notice of Intent to Sue have not yet been served with notice due to difficulties in locating or serving them. Plaintiffs expressly reserve the right to amend this Complaint pursuant to Federal Rule of Civil Procedure 15 to add additional Defendants as they are properly served with notice and their respective 90-day notice periods expire. Plaintiffs further reserve the right to amend to reflect newly discovered responsible parties whose involvement in the violations becomes known through investigation or discovery in this case.

27.     Plaintiffs will serve contemporaneously with the filing hereof, a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 9, the Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

## PARTIES

### A. Plaintiffs

28.     Plaintiff Kristina Brown is an individual residing in the State of California that owns property at 18500 West Avenue F8, Lancaster Rd., Lancaster 93536 Assessor's Parcel Number 3240-007-005.

29.     Plaintiff Ashley Mroz ("Mroz" or "Plaintiff") is an individual residing in the State of California that owns property at 50534 259th St. W. Lancaster, CA 93536.

COMPLAINT

30.    Fires originating from the unlawful dump sites have released particulate matter, volatile organic compounds, contaminated dust, and toxic fumes. These pollutants have repeatedly engulfed Brown and Mroz's homes, settling on their properties, contaminating their land, and degrading air quality in their immediate surroundings. The widespread nature of these fires has created an expansive zone of exposure, subjecting both Plaintiffs to continued and cumulative environmental harm.

31.    Both Brown and Mroz have suffered extensive respiratory and skin issues that began—and have persisted since—the Defendants began dumping at the Sites because of the emissions from the Sites. The proximity of their properties to these ongoing pollution events has directly exposed them to harmful substances, creating an imminent risk of chronic health symptoms.

32.    As a direct result of Defendants' unlawful dumping, Brown and Mroz have suffered substantial economic harm, including the diminished value of their properties. The proximity to Defendants' open dumps has reduced the marketability of their properties. The increased number of fires in their area as a direct result of Defendants' dumping has increased the risk that they will lose fire insurance and increased their insurance premiums, further compounding their financial losses.

33.    Both Brown and Mroz have long enjoyed the serene rural environment of Antelope Valley, characterized by its Mojave grassland habitats. However, the Defendants' unlawful dumping of solid waste has degraded the surrounding environment, disrupting local ecosystems, polluting the air and soil, diminishing the aesthetic and recreational value of the area. As a result, Brown and Mroz have suffered concrete harms, including the loss of their ability to enjoy the natural landscape, the intrusion of unsightly solid waste near their homes, and the deterioration of the environmental quality that once defined their community.

34.    Court-ordered abatement of Defendants' unlawful waste disposal, coupled with remediation of the contaminated sites would directly reduce Plaintiffs' ongoing exposure to toxic substances, mitigate their health risks, and restore the environmental

integrity of their properties and surrounding areas. Such relief would also help reverse the economic harm Plaintiffs have suffered by eliminating the source of contamination and reducing the risks that have devalued their land and increased their insurance burdens.

**B. Defendants**

35.    Defendant Arakelian Enterprises, Inc. d/b/a Athens Services ("Athens") is a corporation doing business in the State of California, with its principal place of business located at 14048 E. Valley Blvd. City of Industry, CA 91746.

36.    Defendant Athens Disposal Company, Inc. ("Athens Disposal") is a corporation doing business in the State of California, with its principal place of business located at 14048 E. Valley Blvd. City of Industry, CA 91746.

37.    Defendant Universal Waste Systems, Inc. ("UWS") is a California corporation, with its principal place of business located at 9010 Norwalk Blvd Santa Fe Springs, CA 90670.

38.    Defendant California Waste Services, LLC ("CWS") is a California limited liability company, with its principal place of business located at 621 West 152nd St. Gardena, CA 90247.

39.    Defendant Organic Energy Solutions, LLC ("OES") is a California limited liability company, with its principal place of business located at 2586 Shenandoah Way San Bernardino, CA 92407.

40.    Defendant America's Recycling Company Inc. ("ARC") is a California corporation, with its principal place of business located at 8832 Bradley Ave. Sun Valley, CA 91352.

41.    Defendant America's Recycling Company 2 Inc. ("ARC 2") is a California corporation, with its principal place of business located at 8832 Bradley Ave. Sun Valley, CA 91352.

42.    Defendant America's Recycling Company 3 Inc. ("ARC 3") is a California corporation, with its principal place of business located at 8832 Bradley Ave. Sun Valley, CA 91352.

COMPLAINT

43. Defendant America's Recycling Company 4 Inc. ("ARC 4") is a California corporation, with its principal place of business located at 8832 Bradley Ave. Sun Valley, CA 91352.

44. Defendant Sean E. Irwin ("Irwin") is an individual residing in the State of California and owning property at Assessor's Parcel Number 3240-007-001, Lancaster, CA 93536 ("the Irwin Site"), which he operates as an open dump.

45. Defendant Cal-Spreading, LLC ("Cal-Spreading") is a California limited liability company doing business in the State of California, with its principal place of business located at 103 W. Camino Encanto Palm Springs, CA 92264 that owns and operates the open dump at the Irwin Site.

46. Defendant the Shin Family Trust is a trust organized in the State of California co-owning and co-operating a parcel at 49155 Three Points Road, Lancaster CA 93536 ("The Three Points Site"), and a second site of approximately 60 acres at the intersection of 280th St. W. and Paterson Rd. in Kern County, California ("The Kern Site") as open dumps.

47. Defendant Jung M. Shin is an individual residing in the State of California co-owning and co-operating the open dumps at the Three Points and Kern Sites.

48. Defendant Kevin Rios is an individual residing in the State of California owning and operating a parcel at APN 3032-017-021 ("The Rios Site") as an open dump.

49. Defendant New West Tractor, LLC is a foreign limited liability company domiciled in Montana and doing business in the State of California where it owns several adjacent parcels (APN 0461-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, 0461-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 and 0461-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) ("The New West Tractor Sites") and operates these sites as open dumps.

50. Defendant WPL Holdings, LLC ("WPL") is a foreign limited liability company domiciled in Illinois and doing business in the State of California where it owns a parcel at APN 3091-014-002 ("The WPL Site") as an open dump and which is the subject matter of this Complaint.

51. Additional Defendants may be added during the course of discovery or upon

the completion of service of Notice of Intent to Sue Letters and the expiration of 90 days thereafter.

52.    At all times relevant herein, each Defendant ratified the unlawful conduct of the other Defendants, their agents and employees and/or engaged in a conspiracy to violate the laws set forth herein by failing to repudiate the misconduct and by accepting the benefits of the transactions with knowledge of the wrongdoing. Defendants have engaged in a conspiracy and aided and abetted each other, with the assistance of their employees and agents, as to committing the unlawful acts in question. Each misconduct as described below violated Federal and California law and operates as a continuing course of conduct. Each unlawful act, set forth below, was designed to enrich Defendants at the expense of the affected individuals and was an overt act in furtherance of that conspiracy. As the last overt act of that conspiracy has yet to take place as such the activities complained of herein are ongoing. Plaintiffs seek relief on behalf of all persons who have been victimized by each Defendant's misconduct going back to when Defendants first began the unlawful activities complained of herein, as doing so is reasonably related to redress the gain or the opportunity for gain achieved by Defendants' unlawful scheme.

# I.    Facts

## A. Defendants Are Creating Open Dumps That Endanger Public Health and the Environment

53.    This case concerns unlawful dumping operations where Defendants have each contributed or who are contributing to the past or present handling, storage, treatment, transportation, or disposal of solid waste which presents an imminent and substantial endangerment to health or the environment.

54.    At the time of this Complaint, the Defendants are currently engaged an intertwined scheme to carry out open dumping of solid waste.

55.    Collectively, Defendants are each actively involved in contributing to this unlawful dumping operation in violation of Federal law, California law and Los Angeles County ordinances.

COMPLAINT

56. Defendants disguise the disposal of C&D debris and other solid waste on these properties as "green waste" by unlawfully covering it with mulch and dirt.

57. These mounds are piled roughly 10-12 feet high, posing a fire risk to the area, which is designated as a "Very High" Fire Hazard Severity Zone.

58. Title 14 requires that any mulch be no more than 12 inches deep, and stockpiling is never allowed.

59. These sites frequently catch fire requiring the county to send multiple fire trucks, fire dozers, and use helicopters to control the spread of fire.

60. On May 7, 2024, the Los Angeles Board of Supervisors asked the County of Los Angeles Fire Department to determine the number of significant mulch/trash related fires within the last four years that could be attributed to improper or unlawful dumping of mulch and/or trash and the associated cost to the Department to provide fire control response to the Sites.

61. On May 28, 2024, the Los Angeles Fire Department reported that "Illegal dumping of mulch/trash has significantly impacted communities across the County, particularly in rural areas like the Antelope Valley."

62. The Fire Department reported that the Bravo Fire at one unlawful dump site cost the Department over $288,000 for four days of firefighting—not to mention endangering first responders, contaminating the surrounding environment, and threatening the health of the Plaintiffs, their community, and their environment.

63. Between 2020–2024 the Department responded to 42 mulch/trash fires predominantly in Antelope Valley with incidents in Neenach, Lancaster, and Fairmont, costing over $1.6 Million.

64. On May 28, 2024, the Department advised the Board of Supervisors that the fires threaten public health and the environment and recommended that the County immediately ban the Defendants' unlawful dumping of contaminated mulch, yet the practice has continued along with the threat to the community.

65. On October 16, 2024, CalRecycle held a public meeting where residents of

Antelope Valley reported significant issues with unlawful disposal, describing thousands of tons of waste including contaminated compostable material, C&D, solid waste, and household hazardous waste on multiple parcels throughout Antelope Valley, including the Defendants' Sites.

66.     In response to these reports, on October 29, 2024, CalRecycle met with Antelope Valley community members, including the Plaintiffs, and community members identified over 50 parcels where this unlawful disposal had occurred.

67.     CalRecycle then contacted the Los Angeles, San Bernardino, and Kern County Local Enforcement Agencies (LEAs) to obtain information on compliance status and enforcement.

68.     On November 17 and 18, 2024, CalRecycle conducted a two-day tour of the impacted sites, during which CalRecycle staff observed multiple types of solid waste, including mulch, fines from construction and demolition recovery facilities, mixed solid waste, and household hazardous waste, as well as berms constructed of layers of native soils and C&D fines covered by solid waste or mulch, piles, or mulch, and trenches containing solid waste, with one site consisting of a shallow canyon filled with waste to a depth of approximately 20 to 30 feet.

69.     Following the inspection, CalRecycle found that the unlawful dumping, including the dumping occurring on Defendants' properties, "caused fires and nuisance, and created a significant risk of harm to public health and safety and to the environment. At this time, the cost of cleaning up this waste is estimated to be in the tens of millions of dollars."[16] CalRecycle explained that "the illegal disposal issue" poses "serious harm to the public peace, health, safety, or general welfare."

70.     To address the significant unlawful disposal of organic waste and construction and demolition waste occurring in Antelope Valley and the surrounding region, CalRecycle proposed emergency regulations to amend sections of the California Code of Regulations

---

[16] This report is publicly available at https://www2.calrecycle.ca.gov/Docs/Web/129663.

and adopt new sections to define Land Application Activities and place these activities within CalRecycle's Compostable Material Handling Facilities and Operations Regulatory Tiers.

71.    These regulations aim to ensure that activities involving land applying compostable material or digestate are appropriately regulated because of their threat to protect public health, safety, and the environment.

72.    These regulations also include amendments to the sampling and record-keeping requirements for solid waste facilities, operations, and activities to ensure that materials sent for land application are sampled to verify suitability, and that sampling test results, weights, and end destinations are recorded to aid in tracking material flow and preventing unlawful disposal.

73.    Although the emergency regulations were approved by the Office of Administrative Law and became effective on February 14, 2025,[17] the regulations fall short of requiring remediation of any of the Sites and have not resulted in the stoppage of the Defendants' activities, necessitating this citizen suit.

74.    Title 14 prohibits any C&D debris from being land-applied. Title 14 also broadly prohibits any mulch operation that negatively impacts the environment.[18]

75.    Even if this material was green waste, it would need to ensure that no more than .05% of its concentration contains foreign, non-organic material and that any foreign material is less than 4 millimeters.

76.    These Sites, however, have received cumulatively hundreds of thousands of tons of waste, which contains significant concentrations of foreign material, much of the material is significantly larger than 4 millimeters, is being piled several feet high (sometimes several yards high), and contains C&D debris. The sites smell of rotten eggs, an identifier of hydrogen sulfide, an Extremely Hazardous Substance and a known by-

---

[17] The Notice of OAL Approval is publicly available at:
https://calrecycle.ca.gov/laws/rulemaking/illegaldisposal/
[18] 14 CCR 18983.1(b)(5)(B)(3).

COMPLAINT

product of C&D debris.[19]

77.    The Defendants' irresponsible commingling of waste streams, regardless of the individual composition of any single Defendant's contribution, has directly and proximately contributed to the creation of an imminent and substantial endangerment to health and the environment.

78.    The dangers associated with the Defendants' unlawful dumping practices are significantly exacerbated by the commingling of diverse waste materials at the Sites. Even seemingly inert materials, such as wood or mulch contributed by certain Defendants, pose a substantial threat when combined with other solid wastes present at the Sites. The commingling of these materials facilitates a higher risk of fire and self-combustion, as the various waste components can act as fuel, accelerants, or ignition sources for one another.

79.    When these commingled waste piles ignite, as they repeatedly have, the resulting combustion releases a complex mixture of toxic fumes, particulate matter, and other hazardous substances into the environment, endangering the health and safety of nearby residents and the environment.

80.    When the Sites have caught fire, they cause the unlawfully stored solid waste to combust, causing toxic fumes to spread throughout the community.

81.    Plausible medical injuries from breathing in toxic fumes from combusting solid waste include lung cancer, leukemia, bladder cancer, heart attack, stroke, increased blood pressure, Chronic Obstructive Pulmonary Disease, reduced lung function, coughing, wheezing, chest tightness, asthma exacerbation, headaches, rashes, eye irritation, and chronic bronchitis.

82.    Long term exposure to toxins contained in C&D debris can also cause neurological issues, cognitive decline, weakened immune system, infertility, birth defects, and developmental issues for children. Exposure to these toxic fumes poses significant and

---

[19] 73 FR 65462 § 355 App. A; *see also* Xu & Townsend, *Factors affecting temporal $H_2S$ emission at construction and demolition (C&D) debris landfills*, Chemosphere Vol. 96, Feb. 2014.

COMPLAINT

1  unreasonable harm to Plaintiffs and their community.

2  **B. Specific Acts by the Individual Defendants**

3  83.     Athens and Athens Disposal administer waste disposal in at least 49
4  residential neighborhoods in Los Angeles.

5  84.     After collecting waste from commercial and residential consumers, Athens
6  delivers waste to its processing facilities.

7  85.     One of Athens' facilities is operated by Crown Recycling (a subsidiary of
8  Athens) in Sun Valley, California. The Crown Recycling facility receives much of Athens'
9  Blue Can recyclables and much of the C&D debris that Athens collects. Athens has
10 described this facility as a "Leader in Construction and Demolition Diversion" on its
11 website, athensservices.com.

12 86.     Another Athens facility, located at 14048 E. Valley Blvd. City of Industry,
13 CA 91746, receives a substantial amount of Athens' organic waste and C&D debris.

14 87.     Athens claims on its website that the City of Industry facility operates an
15 Organic Separation Process—a proprietary technology that Athens holds the exclusive
16 rights to—capable of processing 40 tons per hour that can separate dry material for
17 beneficial reuse.

18 88.     Athens claims that it is providing state-mandated diversion to cities and
19 municipalities with this technology while it is coordinating unlawful dumping in the
20 community, not providing a beneficial reuse of this material.

21 89.     Organic waste is then transported from the City of Industry and Crown
22 Recycling Facilities to another Athens facility, operated by American Organics (also a
23 subsidiary of Athens) at 20055 Shay Road Victorville, CA 92394 for composting.[20] Athens
24 describes the American Organics facility on its website as a "state-of-the-art facility" used

25

26 _____
27 [20] A portion of Athens' organic waste is also transported to another facility, Recology
   Blossom Valley Organics, which is operated as a separate company from Athens and there
28 is no indication that the waste from that facility is improperly processed like the facilities
   operated by Athens.

to "process many types of organics materials."

90.    Athens claims that composting activities at the American Organics facility help achieve "Zero-Waste" practices through the composting of organic waste. Athens sends material collected in green waste (green bins) in municipalities where Athens has a franchise agreement to the American Organics facility for processing.

91.    Often, consumers place trash, recyclables, and other debris in the green waste bins and franchise waste disposers, such as Athens, are paid under these municipal contracts to remove non-green waste from green waste under compliance with Title 14 and Title 27 standards.

92.    The American Organics facility, however, fails to adequately remove non-green waste and instead attempts to crush and chop the non-green waste into smaller sizes disguising its true nature thereby saving millions of dollars in disposal and processing costs.

93.    This mixture is then transported to the Three Points, Irwin, Kern, and New West Tractor Sites and deposited in piles either to cover unlawfully dumped C&D or piled above legally acceptable standards.

94.    Both the dumping of the C&D and the improperly processed green waste are unfit for disposal at the Sites.

95.    UWS administers waste disposal for commercial recycling, residential, and industrial purposes in Southern California, Arizona, and New Mexico. Trucks with UWS' logo have been observed unlawfully dumping solid waste at the Three Points, Kern, and Irwin Sites.

96.    CWS administers C&D disposal in the Greater Los Angeles, Long Beach, and Orange County Areas. CWS has shipped hundreds of thousands of tons of C&D to Cal-Spreading at the Kern and Three Points Sites.

97.    OES operates an aerobic digester in San Bernadino at 2586 Shenandoah Way, San Bernardino, CA 92407.

98.    The OES digester accepts waste products from the food processing and food

18

COMPLAINT

services industry, processes the waste in an anaerobic digester system, and uses the resulting biogas to generate heat and electricity.

99.    The OES digester processes up to 300 tons per day of waste composed of food industry waste slurries from a pre-existing on-site food waste treatment facility and pre-consumer food wastes, collected by local waste haulers.

100.    As a bioproduct of the generation of electricity in processing food waste, the aerobic digester produces liquid sludge that must be tested and then disposed of. OES, however, has been unlawfully sending untested sludge from its biodigester to the New West Tractor Site as a cheap method of disposal. OES also provides its sludge to Athens, which then sends the sludge to other Sites.

101.    ARC (including ARC 2, 3, & 4) operates approximately four material recovery and transfer stations in the Los Angeles Area.

102.    These facilities receive both solid waste and green waste that are supposed to be sorted and screened before being transferred to a permitted transfer station or directly to a landfill. This is not occurring.

103.    ARC has been observed unlawfully dumping and storing unprocessed waste at the Rios Site.

104.    Photos taken by LA County Department of Regional Planning Zoning Enforcement North planner Savannah Murray on May 16, 2024 identify significant amounts of solid waste covered with chipped wood stored over 10-feet high at the Rios Site where ARC is operating an open dump.

105.    Cal-Spreading operates a mulch spreading company in Los Angeles County and is owned by Sean Irwin, the same individual that owns the Irwin Site and operates at the Three Points Site.

106.    Cal-Spreading has a contract with Athens wherein Cal-Spreading receives and distributes contaminated C&D fines and mulch waste for Athens from its sorting facilities.

107.    Cal-Spreading also brokers with trash companies to divert waste from landfills for land application.

COMPLAINT

108.   The waste that Cal-Spreading receives is heavily contaminated and requires "pickers" to go through the waste to sort and remove solid waste after it is dumped on the raw land at the Three Points Site and the Irwin Site.

**C. The Sites are operating as Open Dumps because they store solid waste and C&D debris yet fail to fulfill the EPA or California sanitary landfill requirements**

109.   The Sites violate Section 4005 of RCRA, 42 U.S.C. § 6945(a), by operating as open dumps that receive solid waste without complying with federal regulations for non-hazardous and hazardous waste facilities under 40 C.F.R. §§ 257 and 258. Defendants are disposing of unwanted waste, not engaging in any agricultural use, as the Sites lack irrigation or any infrastructure necessary for farming. The unlawful dumping has severely contaminated the land, rendering future agricultural use nearly impossible until the waste is removed.

110.   **The New West Tractor Sites:** On March 19, 2024, investigators from the San Bernadino County LEA discovered that New West Tractor was spreading contaminated solid and liquid waste across approximately 50 acres.

111.   Photos of the waste show mounds of mulch, green waste, and solid waste mixed in the mounds.

112.   The investigators found that the unlawful dumping had been occurring at the New West Tractor Sites as early as September 26, 2023. Investigators also determined that the organic waste was "missing the sorting line" and was therefore going directly to disposal at the New West Tractor Sites.

113.   Public records show that the New West Tractor Sites were purchased shortly before the unlawful dumping began, on or about July 27, 2023.

114.   Investigators determined that the wastes at the New West Tractor Sites were coming from Athens' American Organics facility at 20055 Shay Rd, Victorville, CA 92394, in San Bernadino County and liquid wastes from OES' San Bernadino Biodigester at 2586 Shenandoah Way, San Bernadino, CA 92407.

115. According to records provided by Athens Services—in only three months between January to March 2024—Athens sent over 10,000 tons of contaminated mulch to the New West Tractor Sites.

116. The San Bernadino Office of Public Health issued a Notice of Violation ("NOV") and a removal order to OES for unlawfully sending untested digestate to the New West Tractor Site.

117. Investigators obtained a contract between Athens Services/American Organics with New West Tractor wherein Athens Services would pay New West Tractor to accept the solid waste.

118. Investigators determined that the unlawful dumping at the Site constituted a public nuisance but currently no RCRA, nor other cleanup action has been initiated.

119. **The Irwin Site:** Numerous neighbors noticed the accumulation of C&D fines covered with mulch along with the smell of rotten eggs quickly after Irwin and Cal-Spreading purchased the parcel in December 2023.

120. The Irwin Site has a land use code of "single-family residential," not any commercial purpose, and certainly not receiving solid waste.

121. On February 26, 2024, investigators from the Los Angeles County LEA investigated the Irwin Site and identified significant environmental concerns, namely unlawfully stored (and stockpiled) C&D fines on the property.

122. The LEA took agency action, issuing a NOV and ordering Irwin and Cal-Spreading to immediately cease the unlawful disposal of C&D and to remove the stockpiles no later than August 2, 2024.

123. On August 7, 2024, LEA investigators returned to the Irwin Site for a reinspection and again observed unlawful C&D stockpiles and issued a Cease and Desist and Corrective Action Order ("CAO") against Irwin.

124. During the reinspection, investigators also observed physical contaminants on the property including, but not limited to, glass, plywood, and plastics, and mulch that did not meet the physical contamination limits.

125.   The investigators determined that the presence of these contaminants in mulch at the Irwin Site constituted a violation of the state land application requirements.

126.   Irwin admitted to investigators that the contaminated mulch was—like the New West Tractor Sites—from Athens' American Organics facility in San Bernadino County.

127.   On October 24, 2024, Los Angeles County Public Health, the LEA, and LA County Public Works arrived at the Irwin Site to observe the conditions considering numerous community complaints.

128.   While at the Irwin Site, inspectors observed considerable amounts of solid waste, including a used tampon, an Airwick freshener, a screwdriver, innumerable amounts of plastic and plastic waste, and a chunk of OBS plywood just in the area they were standing. Inspectors also identified—and Irwin admitted—that he has between 6-12 trash pickers in the field removing trash from the dumps received over night and that no one is present at the site to determine if the waste is suitable for land application.

129.   And yet, neither of these agencies took any action to prevent the continued storage and receipt of solid waste at the Irwin Site. To date, Irwin has not stopped receiving waste shipments at the Irwin Site.

130.   **The Three Points Site:** Neighbors noticed that the site began receiving numerous shipments of solid waste, C&D, and mulch from UWS and CWS.

131.   Because this site is close to the Irwin Site, Irwin has been seen moving waste from the Irwin Site to the Three Points Site, likely to remove the C&D debris from the Irwin Site before reinspection.

132.   This, however, is in violation of the LEA NOV and CAO, which required him to dispose of the waste at a registered SWIS facility, which the Three Points Site is not.

133.   The Three Points Site is approximately 140 acres with 15-foot-high berms of contaminated mulch and C&D debris.

134.   The Three Points Site frequently self-ignites, requiring county fire services to respond with multiple trucks and helicopters to control the fire.

COMPLAINT

135.    When the Three Points Site burns, smoke spreads from this Site throughout the community in an eastern direction all the way to El Mirage, California, approximately 70 miles away. The smoke from the Three Points Site, and the other sites nearby, permeates Plaintiffs' homes and their community with smoke and contaminants their air.

136.    The Three Points Site caught fire on July 6, 2024 ("The Veronica Fire") for at least three days, and again on August 22, 2024.

137.    The Three Points Site is a mere 528 feet from the West Valley County Water District well site, which is the sole potable water source for the approximately 798 residents in Neenach, California, including Plaintiff Mroz, and provides potable water for individuals throughout the county who lack well access.

138.    **The Kern Site:** Neighbors have observed trucks from UWS and CWS deliver waste to the Kern Site for Athens.

139.    The Kern Site began unlawfully storing waste beginning in January 2023 to the present and is now covered with solid waste and C&D debris piled several feet high (in some places as much as ten feet high).

140.    **The WPL Site:** The WPL Site unlawfully receives, and stockpiles, contaminated waste mixed with mulch from Athens and other as of yet unidentified companies.

141.    The site has also self-combusted at least once since WPL began unlawfully storing solid waste there.

142.    **The Rios Site:** The Rios Site has unlawfully stockpiled C&D debris, hospital waste (medical records, colonoscopy bags, IV drips), and solid waste from ARC. Ex. 1.

143.    This site has self-ignited multiple times.

144.    Although the state and county regulators have issued NOVs or CAOs at some of the Sites, none of the regulators have successfully compelled any of the Defendants to fully remediate the Sites. To date, none of the conditions described above at any of the Sites have been ameliorated and each of the Sites pose an imminent threat of harm to Plaintiffs.

COMPLAINT

145.    This inadequate state and county enforcement necessitates this citizen suit.

## II.    Causes of Action

### A. Count I: Violations of The Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1).

146.    Plaintiffs incorporate the foregoing allegations by reference as if fully set forth herein to the extent relevant to this Count and the relief available thereunder.

147.    Each Defendant is a "person" subject to the citizen suit provisions of RCRA, 42 U.S.C. § 6972.

148.    Each Defendant is in violation of EPA and California regulatory requirements for contributing to unlawful open dumping on at least one of the Sites under 40 C.F.R. §§ 257 and 258 and in violation of 42 U.S.C. § 6972(a)(1)(A).

149.    Defendants Athens Services & Athens Disposal (collectively referred to as "Athens"), CWS, UWS, OES, and ARC are each waste Generators that are contributing to the open dumping at the Sites by willingly sending solid waste to the Sites.

150.    Defendants Shin Family Trust, Jung M. Shin, Sean Irwin, Cal-Spreading, WPL, New West Tractor, and Kevin Rios are Site owners who are encouraging the Generators to contribute to the open dumps, in exchange for payment from the Generators, and themselves are contributing to the open dumping by storing the solid waste on properties that they own.

COMPLAINT

151.   The relationship between the Defendants, as well as their contributions to specific Sites, is provided in the following diagram:



## Generators

## The Sites

152.   Each Defendant is exercising some degree of control over the open dumping at these Sites through their own acts of generating, transporting or storing the waste.

153.   Each Defendant is causing or has caused or contributed to the past and/or present handling storage, treatment, transport and/or disposal of solid waste which presents an imminent and substantial endangerment to human health and/or the environment within the meaning of 42 U.S.C. § 6972(a)(1)(B).

154.   Defendants' unlawful disposal and mismanagement of waste include, but are not limited to, the repeated dumping of construction and demolition debris disguised as "green waste," the stockpiling of waste in violation of regulatory limits, and the failure to implement any measures to prevent contamination of soil, air, and water or the spread of fire.

155.    Defendants' conduct has created and continues to create conditions that present an imminent and substantial endangerment to human health and the environment. The unlawful disposal sites frequently catch fire, emitting toxic fumes and hazardous substances, including hydrogen sulfide, into the surrounding community. These fires have required extensive emergency response efforts, causing significant harm to public resources and exposing residents to severe health risks.

156.    None of the Defendants has ever installed any liner beneath these piles nor completed a stormwater pollution prevention plan to prevent the migration of contaminants into the groundwater beneath the Sites.

157.    Exposure to the contaminants generated by Defendants' activities, including combustion byproducts from unlawful waste disposal, can cause serious health effects, including but not limited to respiratory ailments, neurological damage, cardiovascular disease, and increased cancer risks. The hazardous conditions at the sites also pose a substantial risk of property damage, including the threat of uncontrolled fires spreading to nearby homes and businesses.

158.    Plaintiffs' interests are being harmed and will continue to be harmed by the endangerment and by Defendants' failure to abate the endangerment, unless the Court grants the relief sought herein.

159.    Plaintiffs have suffered and will continue to suffer harm, including damage to their properties, exposure to hazardous air pollutants, persistent noxious odors, dust, and an ongoing risk of catastrophic fire events originating from these unlawful waste sites.

160.    Plaintiffs seek injunctive relief under 42 U.S.C. § 6972(a), requiring Defendants to take all necessary actions to remediate and eliminate the endangerment, including but not limited to the proper removal and disposal of unlawfully dumped waste, fire mitigation measures, and environmental monitoring to prevent further harm. Plaintiffs further seek any other relief the Court deems just and proper.

## III.    Jury Trial Demanded and Prayer for Relief

**WHEREFORE**, Plaintiffs request that the Court enter an order or judgment against

Defendants:

    1.    Requiring Defendants to bear the costs of a property inspection and remediation program, including, but not limited to, testing, examination, abatement and remediation of the Sites;

    2.    Awarding Plaintiffs attorney's fees, interest, and litigation costs; and

    3.    Granting any other relief the Court deems necessary, just and proper.

Dated:  April 2, 2025

/s/ *April Strauss*
APRIL STRAUSS (SBN 163327)
april@nidellaw.com
CHRISTOPHER NIDEL (*pro hac vice forthcoming*)
chris@nidellaw.com
JONATHAN NACE (*pro hac vice forthcoming*)
jon@nidellaw.com
ZACHARY KELSAY (*pro hac vice forthcoming*)
zach@nidellaw.com
NIDEL & NACE, P.L.L.C.
One Church Street, Suite 802
Rockville, MD 20850
Telephone: (202) 780-5153

**Attorneys for Plaintiffs**

COMPLAINT

## CERTIFICATE OF SERVICE

I, April Strauss, an attorney, hereby certify that the **Complaint** and **Summons** will be served on Defendants' registered agents and an affidavit proof of service shall be filed with the Court in accordance with Federal Rule of Civil Procedure 4.

By: */s/ April Strauss*
April Strauss

***Attorney for Plaintiffs***

COMPLAINT