MANATT, PHELPS & PHILLIPS, LLP
Peter R. Duchesneau (Bar No. CA 168917)
pduchesneau@manatt.com
David T. Moran (Bar No. CA 217647)
dmoran@manatt.com
Thomas A. Whittington (Bar No. CA 355949)
TWhittington@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Douglas J. Smith (*pro hac vice*)
djasmith@manatt.com
1700 M Street NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 585-6500
Facsimile: (202) 585-6600

*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC. DBA ATHENS SERVICES and ATHENS DISPOSAL COMPANY, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN

KRISTINA BROWN and ASHLEY MROZ,

Plaintiffs,

v.

ARAKELIAN ENTERPRISES, INC. et al.,

Defendants.

Case No. 2:25-cv-2855-MWC-PD
Judge: Hon. Michelle Williams Court

**DEFENDANTS ARAKELIAN ENTERPRISES, INC. AND ATHENS DISPOSAL COMPANY, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

[Filed Concurrently with Separate Statement of Uncontroverted Facts; Declaration of Douglas J. Smith; Declaration of Enrique Gonzalez; Declaration of Jennifer Eernisse; Declaration of Samantha Winkle; and [Proposed] Order]

| | |
|---|---|
| Hearing Date: | November 6, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 6A |
| Date Filed: | April 3, 2025 |
| Trial Date: | February 8, 2027 |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 6, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Michelle Williams Court in Courtroom 6A of the United States District Court, Central District of California, located at 350 West 1st St., Los Angeles, CA 90012, Defendants Arakelian Enterprises, Inc. dba Athens Services and Athens Disposal Company, Inc. (collectively "Athens") will and hereby does move for summary judgment pursuant to Federal Rule of Civil Procedure 56 against the sole causes of action in the Complaint of Plaintiffs Kristina Brown and Ashley Mroz (collectively, "Plaintiffs").

The grounds for Athens' motion are that there are no genuine disputes as to any material facts and that Athens is entitled to judgment as a matter of law. More specifically:

- Plaintiffs lack Article III standing to assert claims under 42 U.S.C. § 6972(a)(1)(A) and § 6972(a)(1)(B) in relation to certain Sites at issue in this case;
- Plaintiffs' open-dumping claim under § 6972(a)(1)(A) fails as a matter of law because there is no actionable violation by Athens and, alternatively, there is no evidence that the Sites pose any reasonable probability of adverse effects under 40 C.F.R. 257.3; and
- Plaintiffs' claim under § 6972(a)(1)(B) should be dismissed because there is no evidence of an imminent and substantial endangerment.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, and the concurrently-filed Separate Statement of Uncontroverted Facts, the Declarations of Douglas J. Smith, Jennifer Eernisse, Samantha Winkle and Enrique Gonzalez, and Proposed Order, and all other pleadings and papers on file in this action, and such other further or additional matters and oral argument as may be presented at or prior to the hearing on this motion.

This motion is made following the conference of counsel, which took place pursuant to L.R. 7-3, via Zoom conference with counsel for Plaintiffs and the other parties on September 8, 2026. (Declaration of Douglas J. Smith, ¶¶ 2-4.)

Dated: September 18, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Peter R. Duchesneau*
Peter R. Duchesneau
*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC. DBA ATHENS SERVICES and ATHENS DISPOSAL COMPANY, INC.

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1
II. STATEMENT OF FACTS ........ 2
A. Plaintiffs' Claims ........ 2
B. State Land Application Regulations ........ 3
C. Alleged Disposal Sites ........ 4
D. Athens Services ........ 5
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 6
A. Plaintiffs Lack Article III Standing as to New West Tractor, WPL, and Kern. ........ 6
1. The Sites Are Miles From Plaintiffs' Properties and Were Never Used by Plaintiffs. ........ 7
2. A Generalized Interest in the Antelope Valley Environment Cannot Substitute for Use of the Sites. ........ 8
B. Summary Judgment Should Be Granted as to Plaintiffs' Open-Dumping Claim Under § 6972(a)(1)(A). ........ 9
1. Athens Ceased Deliveries to Every Site Before Plaintiffs Sued. ........ 9
2. In the Alternative, Plaintiffs Lack Evidence That Any Site Poses a Reasonable Probability of Adverse Effects Under 40 C.F.R. § 257.3. ........ 11
C. Summary Judgment Should Be Granted on Plaintiffs' § 6972(a)(1)(B) Endangerment Claim. ........ 14
1. Plaintiffs Cannot Demonstrate Immediate Human-Health Endangerment. ........ 16
2. Plaintiffs Cannot Demonstrate Immediate Environmental Endangerment. ........ 20
V. CONCLUSION ........ 22
**CERTIFICATE OF COMPLIANCE** ........ 23

# TABLE OF AUTHORITIES

## CASES

*Addisu v. Fred Meyer*,
198 F.3d 1130 (9th Cir. 2000) .......... 6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 6

*ARC Ecology v. U.S. Maritime Admin.*,
2010 WL 235065 (E.D. Cal. Jan. 21, 2010) .......... 12

*Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*,
273 F.3d 1229 (9th Cir. 2001) .......... 12

*Ascon Props. Inc. v. Mobil Oil Co.*,
866 F.2d 1149 (9th Cir. 1989) .......... 9

*Ashoff v. City of Ukiah*,
130 F.3d 409 (9th Cir. 1997) .......... 11

*Bd. of Comm'rs of Cnty. of La Plata v. Brown Grp. Retail, Inc.*,
598 F. Supp. 2d 1185 (D. Colo. 2009) .......... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 5, 6

*Chart v. Town of Parma*,
2012 WL 3839241 (W.D.N.Y. Aug. 28, 2012) .......... 9

*City of Fresno v. United States*,
709 F. Supp. 2d 934 (E.D. Cal. 2010) .......... 16, 17, 22

*City of Imperial Beach v. Int'l Boundary & Water Comm'n*,
337 F. Supp. 3d 916 (S.D. Cal. 2018) .......... 8

*Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.*,
989 F.2d 1305 (2d Cir. 1993) .......... 9

*Conservation Law Found. v. Shell Oil Co.*,
628 F. Supp. 3d 416 (D. Conn. 2022) .......... 9

*Cordiano v. Metacon Gun Club, Inc.*,
575 F.3d 199 (2d Cir. 2009) .......... 15, 17, 21

*Courtland Co. v. Union Carbide Corp.*,
2023 WL 6331069 (S.D. W. Va. Sept. 28, 2023) .......... 12, 15, 17

*Covington v. Jefferson Cnty.*,
358 F.3d 626 (9th Cir. 2004) .......... 11

*Crandall v. City & County of Denver, Colo.*, 594 F.3d 1231 (10th Cir. 2010) .......... 19

*Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1083 (D. Or. 2024) .......... 15

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083 (9th Cir. 2017) .......... 6, 16, 19, 21

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .......... 6

*Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500 (4th Cir. 2015) .......... 9

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987) .......... 9

*H & H Holding, L.P. v. Chi Choul Lee*, 2014 WL 958878 (E.D. Pa. Mar. 6, 2014) .......... 18

*Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467 (D.N.J. 2006) .......... 12

*Harper v. Wallingford*, 877 F.2d 728 (9th Cir. 1989) .......... 6

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 399 F.3d 248 (3d Cir. 2005) .......... 17

*June v. Town of Westfield*, 370 F.3d 255 (2d Cir. 2004) .......... 10

*Lincoln Props., Ltd. v. Higgins*, 1993 WL 217429 (E.D. Cal. Jan. 21, 1993) .......... 15

*Living Lands, LLC v. Cline*, 657 F. Supp. 3d 831 (S.D.W. Va. 2023) .......... 15

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .......... 6, 8, 20

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) .......... 6

*Meghrig v. KFC W., Inc.*, 516 U.S. 479 (1996) .......... 6, 15

*N. Cal. River Watch v. Exxon Mobil Corp.*, 2010 WL 3184324 (N.D. Cal. Aug. 11, 2010) .......... 10

*N. Cal. River Watch v. Fluor Corp.*,
2014 WL 3385287 (N.D. Cal. July 9, 2014) .................... 10

*O'Leary v. Moyer's Landfill, Inc.*,
523 F. Supp. 642 (E.D. Pa. 1981) .................... 13

*Price v. U.S. Navy*,
39 F.3d 1011 (9th Cir. 1994) .................... 15

*Rapanos v. United States*,
547 U.S. 715 (2006) .................... 13

*S. Rd. Assocs. v. Int'l Bus. Machs. Corp.*,
216 F.3d 251 (2d. Cir. 2000) .................... 9, 10, 17

*Sackett v. EPA*,
598 U.S. 651 (2023) .................... 13

*Schmucker v. Johnson Controls, Inc.*,
477 F. Supp. 3d 791 (N.D. Ind. 2020), *aff'd*, 9 F.4th 560 (7th Cir. 2021) .................... 17, 19

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .................... 6, 8

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .................... 8

*Verse Two Props., LLC v. MedPlast Fremont, Inc.*,
2015 WL 6955133 (N.D. Cal. Nov. 10, 2015) .................... 10

**STATUTES**

Section 4005, 42 U.S.C. § 6945(a) .................... 2, 9

16 U.S.C. § 1532(19) .................... 12

42 U.S.C. § 6972(a)(1) .................... 2

42 U.S.C. § 6972(a)(1)(A) .................... 2, 9

42 U.S.C. § 6972(a)(1)(B) .................... 3, 14

Cal. Pub. Res. Code § 42654, *et seq.* .................... 3

Title 14 of the California Code of Regulations .................... 2, 11, 12

CCR tit. 14, § 17852(a)(24.5) .................... 3

Clean Water Act .................... 12

Endangered Species Act .................... 12

Plaintiffs' Resource Conservation and Recovery Act .................... 1

RCRA ........ passim
RCRA § 257.3-3 ........ 12
Recovery Act ........ 1

**OTHER AUTHORITIES**

40 C.F.R. Parts 257 and 258 ........ 2
40 C.F.R. pt. 257, app. I ........ 13
40 C.F.R. pt. 503 ........ 11
40 C.F.R. §§ 257.1(c)(10), 258.1, 258.2 ........ 11
40 C.F.R. § 257.3 ........ 10, 11
40 C.F.R. § 257.3–4(a) ........ 9
40 C.F.R. § 257.3-2 ........ 12
40 C.F.R. § 257.3-4 ........ 13
40 C.F.R. § 257.4 ........ 13
40 C.F.R. § 258.1(b) ........ 11
(50 C.F.R. § 17.3) ........ 12
2026. CCR tit. 14, §§ 17410.5, 17852, 17862.3, 17862.4, 17868.6, 17896.62 ........ 3
Cal. Reg. Notice Register 2025, No. 9-Z (Feb. 28, 2025) ........ 4
Engage in Something, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/engage-in (last visited Sept. 18, 2026) ........ 14
Opinion 6 ........ 16
*Statement of Reasons* (2020), available at https://calrecycle.ca.gov/laws/rulemaking/archive/2020-2/slcp/; ........ 11
*Statement of Reasons* (2026), available at https://calrecycle.ca.gov/laws/rulemaking/permanentid/ ........ 11

**RULES**

FRCP 56(a) ........ 5
FRCP 56(c), (c)(1)(A) ........ 6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Resource Conservation and Recovery Act ("RCRA") open-dumping claim against Athens[1] fails for the simple reason that Athens had already ceased delivering material to the sites at issue before Plaintiffs sued, rendering the open-dumping provisions of the statute inapplicable. Athens' last delivery to any site was in September 2024; Plaintiffs sued in April 2025. The open-dumping claim also fails for the separate reason that Plaintiffs cannot identify a specific federal criterion that any site violates—they rely instead on state standards and conclusory labels—nor can they tie Athens specifically to any purported violation.

Plaintiffs' RCRA claim of imminent and substantial endangerment to health or the environment is equally flawed. Plaintiffs must tie the endangerment to Athens' material, trace a complete and exposure pathway to a human or environmental receptor, and show that the exposure, risk, and degree of harm constitute a serious and immediate threat. Yet Plaintiffs' experts performed no risk assessment, identified no completed pathway, and quantified no exposure demonstrating any endangerment to human health or an actionable impact to the environment. They merely offer the presence of material on the sites with a handful of non-applicable screening-level exceedances, dressed up in conditional opinions that contamination *might* reach a receptor someday, that an unlikely combustion risk *persists*, and the sites *could have been and could be habitat*. Mere presence is not endangerment; mere exceedance is not exposure; and a conjectural harm that might arise if conditions change is not imminent.

In addition, Plaintiffs lack standing to assert any claim with respect to three of the five sites where Athens allegedly delivered material. Plaintiffs live more than 40 miles

[1] There are two Athens defendants: Arakelian Enterprises, Inc. dba Athens Services, and Athens Disposal Company. The latter has no assets, revenue, employees or operations and did not generate or ship any material at issue. For simplicity, both companies are referred to herein collectively as "Athens."

away from two of them (New West Tractor and WPL) and have not described any non-litigation-related interaction with those sites or the third distant site (Kern).

The Court need not weigh competing evidence or resolve a dispute of fact. Even accepting almost everything in Plaintiffs' expert reports as true, there is no present act of open dumping, no actionable violation, and no competent evidence of a present imminent and substantial endangerment. Hence, Plaintiffs' claims fail as a matter of law.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Claims

Plaintiffs Kristina Brown and Ashley Mroz own property in Lancaster, in California's Antelope Valley.[2] (Athens' Separate Statement of Uncontroverted Facts ["UF"] 1-3.) They sued in April 2025 and then filed a FAC against numerous defendants alleging unlawful disposal at more than 50 parcels in the Antelope Valley but only seeking relief as to seven unrelated parcels. (UF 7; FAC ¶¶ 65, 149, 152, 154.)

The FAC pleads a single cause of action under RCRA's citizen-suit provision, 42 U.S.C. § 6972(a)(1), but it packs two distinct claims with different legal standards. (FAC ¶¶ 147, 149, 154.) Both arise from the same conduct: the delivery of processed material to the sites for land application, and the spreading of that material once it arrived. (FAC ¶¶ 84–93.) Plaintiffs contend that this material was disguised solid waste and C&D debris rather than a legitimate soil amendment. (FAC ¶¶ 3, 55, 93.) For purposes of this motion only, Athens does not dispute that the material did not comply with the land application requirements of Title 14 of the California Code of Regulations ("CCR").

***The open-dumping claim.*** First, Plaintiffs assert an open-dumping claim under § 6972(a)(1)(A). They allege that each defendant is "in violation" of RCRA's open-dumping prohibition, Section 4005, 42 U.S.C. § 6945(a), because the Sites received solid waste without meeting the federal criteria for sanitary landfills set out in 40 C.F.R. Parts 257 and

[2] Brown lives in Los Angeles (Silver Lake) but owns property in Lancaster at 18500 West Avenue F8. (UF 1, 3.) Mroz lives at 50534 259th Street West. (UF 2.)

258. (FAC ¶¶ 10, 109, 149.) This claim depends on a present, ongoing violation of an enforceable RCRA requirement.

***The endangerment claim.*** Second, Plaintiffs assert an imminent-and-substantial-endangerment claim under § 6972(a)(1)(B). They allege that each defendant contributed to the past or present handling, storage, treatment, transportation, or disposal of solid waste that "may present an imminent and substantial endangerment to health or the environment," citing fire and self-combustion at the Sites, resulting air emissions, habitat impacts, and the risk that contaminants will leach into soil and water. (FAC ¶¶ 4, 154–158.) Unlike the open-dumping claim, this claim can reach past contribution to disposal, but it requires proof of an immediate, serious threat.

The two claims are analytically separate and do not rise or fall together. Open-dump status is not itself an imminent and substantial endangerment, and a failure to prove a Part 257 criterion does not defeat the endangerment theory. That distinction matters for the analysis that follows, because Athens is entitled to summary judgment on each claim for independent reasons.

### B. State Land Application Regulations

Enacted in 2016, California SB1383 mandated a 75% reduction in organic waste sent to landfills. Cal. Pub. Res. Code § 42654, *et seq*. In furtherance of SB1383, California adopted "land application" regulations in 2020 that provided for the deposition of compostable material and digestate on land subject to certain conditions. CCR tit. 14, § 17852(a)(24.5). Because the deposit of material under these regulations helps satisfy the SB 1383 mandate, local jurisdictions may not enforce any ordinance restricting or banning an activity like land application that helps reduce landfill disposal, as long as the activity complies with the regulatory requirements. *Id.* §§ 18983.1(b)(6), 18990.1(b). In 2025, CalRecycle amended the land-application regulations through emergency regulations approved by OAL effective February 14, 2025, and those amendments were later adopted as permanent regulations effective March 4, 2026. CCR tit. 14, §§ 17410.5, 17852,

17862.3, 17862.4, 17868.6, 17896.62; Cal. Reg. Notice Register 2025, No. 9-Z (Feb. 28, 2025) (filed and effective Feb. 14, 2025); *id.* 2026, No. 12-Z (Mar. 20, 2026) (filed and effective Mar. 4, 2026).

### C. Alleged Disposal Sites

Plaintiffs allege that Athens generated noncompliant land application material that was delivered to five sites: Irwin, Three Points, Kern, WPL, and New West Tractor (the "Sites") (FAC ¶ 152)—located in disparate parts of the Antelope Valley across three counties:

- **Irwin:** 18350 West Avenue F8, Lancaster, in Los Angeles County, adjacent to Brown's property and 8.8 miles from Mroz's home. (UF 9.)
- **Three Points:** 49155 Three Points Road, Lancaster, in Los Angeles County, 1.7 miles from Mroz's home and 8 miles from Brown's property. (UF 11.)
- **Kern:** at the intersection of 280th Street West and Patterson Road in unincorporated Kern County, 3.5 miles from Mroz's home and 11.7 miles from Brown's property. (UF 12.)
- **WPL:** a remote site in Los Angeles County, more than 50 miles from Mroz's home and more than 40 miles from Brown's property. (UF 14.)
- **New West Tractor:** a remote site in San Bernardino County, more than 50 miles from Mroz's home and more than 40 miles from Brown's property. (UF 16.)

Plaintiffs and their experts claim that the material delivered to these Sites from various Defendants (and unnamed contributors) has the potential to expose people to hazardous contaminants and eventually contaminate surface water and groundwater. (FAC ¶ 4; Smith Decl., Ex. 18 (Chow/Dalby Report at 21), Ex. 20 (Perez Report at 62).) They also claim that such material could disperse toxic air emissions via windblow dust or smoke if the mulch spontaneously combusts (*id.*, Ex. 20 (Perez Report at 62–64)) and has degraded the suitable habitat for potential special-status wildlife and plant species (*id.*, Ex. 18 Chow/Dalby Report at 74, 108).

### D. Athens Services

Athens has never owned or operated any of the Sites. (UF 19; *see also* UF 10, 13, 15, 17.) Rather, Athens produced and shipped material for land application from two facilities: American Organics and Crown Recycling. (UF 18.) But before Plaintiffs issued their notice of intent to sue in December 2024 and then sued in April 2025, all Athens deliveries to the Sites had already ended. (UF 7, 30-32.)

American Organics shipped material to WPL, New West Tractor, and Irwin. (UF 20.) WPL deliveries ran April 2021 to September 2024; New West Tractor deliveries ran July 2023 to March 2024; and Irwin deliveries ran June to August 2024. (UF 22-24.) By September 2024, American Organics had stopped shipping all land application material. (UF 31.)

Crown Recycling shipped material to Three Points, Irwin and Kern. (UF 21.) Crown delivered to Three Points Site from September 2020 to December 2023. (UF 25.) Crown delivered to Irwin in January and February 2024, then ceased all shipments by the end of February 2024. (UF 26.) There is testimony that Crown material shipped to Irwin was redirected to Kern, but only for the last two weeks in February 2024. (UF 27.[3])

Athens has ended its land application program and has no plans to resume it. (UF 32.)

## III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Where the nonmoving party bears the burden of proof at trial, the movant may satisfy that burden by showing an absence of evidence to support the nonmoving party's case. *Id.* at 325. The nonmoving party must

[3] For the limited purposes of this motion, Athens does not dispute that Crown material was shipped to Kern, but Athens reserves the right at trial to contest that allegation.

then identify specific facts in admissible evidence showing a genuine issue for trial. *Id.*; FRCP 56(c), (c)(1)(A).

A genuine dispute requires more than a scintilla of evidence. A fact is material if it may affect the outcome under governing law, and genuine only if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere disagreement or a bald assertion that a dispute exists does not preclude summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## IV. ARGUMENT

### A. Plaintiffs Lack Article III Standing as to New West Tractor, WPL, and Kern.

Standing requires each plaintiff to prove injury in fact, traceability, and redressability for each site and each theory of liability, supported at summary judgment by specific facts. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Aesthetic or recreational injury requires actual use of the affected area, not a nearby area or impact "in the vicinity." *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1093 (9th Cir. 2017); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 182–83 (2000); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 887–89 (1990). As *Sierra Club v. Morton* confirms, the plaintiff must "be himself among the injured." 405 U.S. 727, 734–35 (1972). The dispositive question is use of each challenged parcel, not the surrounding region.

Further, RCRA authorizes only prospective relief, so Plaintiffs' use and injury must be present or imminent and redressable by an injunction. *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485–86 (1996). A past investigatory or litigation-driven visit is not enough—there must be "continuing, present adverse effects" for prospective relief. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998). Plaintiffs therefore must identify a present or imminent injury they will suffer from New West Tractor, WPL, or Kern that an

injunction can redress. A cleanup injunction cannot manufacture standing where Plaintiffs show no present use or injury.

Neither Plaintiff had or has any connection to New West Tractor, WPL, and Kern, nor can they connect a present, redressable injury to Athens' conduct there. Therefore, Plaintiffs cannot demonstrate standing to pursue any claim regarding those three sites.[4]

**1. The Sites Are Miles From Plaintiffs' Properties and Were Never Used by Plaintiffs.**

Plaintiffs cannot plausibly show any injury from these three Sites. New West Tractor and WPL are more than 50 miles from Mroz and more than 40 miles from Brown; Kern is 3.5 miles from Mroz and 11.7 miles from Brown. Plaintiffs live generally upwind of New West Tractor and WPL, and prevailing winds run away from their properties. Athens' air quality expert, Timothy Sturtz, Ph.D., found no substantial influence from air dispersion from these distant sites at Plaintiffs' properties due to distance, direction, dilution, and dispersion. (UF 40.) Plaintiffs offer no contrary air dispersion modeling, source apportionment analysis, or site-specific sampling tying emissions from any of these parcels to their properties. (UF 41.)

Mroz had no knowledge of WPL or New West Tractor before this litigation, and she only visited the sites during a single investigatory tour in December 2025, long after she sued. (UF 33.) Brown first visited New West Tractor after a task-force meeting "to go see dumping sites," and she only learned of WPL in her investigation by following a truck from American Organics and entered the parking lot once to pick up her lawyer. (UF 34.) Such litigation activities do not qualify as recreational or aesthetic use of either parcel.

While Kern is closer to Plaintiffs' properties, it is still miles away and there is no established use or an exposure pathway, as Plaintiffs' visits to Kern were solely investigatory. (UF 36.) Also, Mroz's testimony that she could see Kern from home and

[4] For purposes of this motion, Athens does not challenge standing as to the Irwin or Three Points sites and reserves all other standing issues.

rode dirt bikes “towards” it merely describes use of the vicinity, not the parcel itself; her interrogatory response similarly describes recreation east of Kern, not at Kern. (UF 37.)

That Brown and Mroz drive around the Antelope Valley and “through the area” also does not qualify as recreational or aesthetic use of these parcels. (UF 38.) Nor can a desire to use the sites “some day” establish standing: intentions without “concrete plans” do not establish actual or imminent injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan*, 504 U.S. at 564).

**2. A Generalized Interest in the Antelope Valley Environment Cannot Substitute for Use of the Sites.**

A generalized interest in the Antelope Valley environment is not particularized injury. *Lujan* rejected an ecosystem-nexus theory because a regional interest is shared with the public. 504 U.S. at 565; *see also Sierra Club*, 405 U.S. at 734–35; *Summers*, 555 U.S. at 494. Without more than Plaintiffs’ “generalized interest in deterrence,” prospective relief is unavailable. *Steel Co.*, 523 U.S. at 108-09.

Traceability fails for the same reason. The FAC alleges “over 50 parcels” of unlawful disposal and 42 mulch/trash fires in the Antelope Valley area. (FAC ¶¶ 62, 65.) The Los Angeles County LEA also identified roughly 70 suspected sites plus permitted and mobile sources, agriculture, windblown dust, fires, and other mulch and dumping sites. (UF 42.) Plaintiffs offer no site-specific sampling or modeling of smoke or other emissions or injury alleged to be caused by New West Tractor, WPL, or Kern. No injury can be fairly traceable to either Athens or the three sites when it may reflect independent third-party activity. *Lujan*, 504 U.S. at 560; *City of Imperial Beach v. Int’l Boundary & Water Comm’n*, 337 F. Supp. 3d 916, 924–26 (S.D. Cal. 2018) (“Plaintiffs must show that the injury is fairly traceable to [defendant’s] alleged misconduct, and not the result of misconduct of some third party not before the court.”).

Because neither plaintiff used New West Tractor, WPL, or Kern, and neither identifies a present injury fairly traceable to Athens at those sites, Plaintiffs lack standing

to assert claims based on those sites, warranting summary judgment on claims as to those sites.

**B. Summary Judgment Should Be Granted as to Plaintiffs' Open-Dumping Claim Under § 6972(a)(1)(A).**

Lack of standing aside, Plaintiffs' open-dumping claim under § 6972(a)(1)(A) fails for two independent reasons: (1) Athens ended all deliveries before suit, and (2) Plaintiffs lack competent evidence of an actionable Part 257 violation.

**1. Athens Ceased Deliveries to Every Site Before Plaintiffs Sued.**

A citizen suit can only be brought against a person "alleged to be in violation" of a RCRA requirement, including (as relevant here) RCRA's open-dumping prohibition. 42 U.S.C. § 6972(a)(1)(A). There is no dispute that Crown ceased sending all materials by March 2024 and American Organics ceased sending materials in September 2024.

Section 6972(a)(1)(A) is worded entirely in the present tense. As the Ninth Circuit has explained, a defendant "simply could not have been 'in violation'" of RCRA when the alleged disposal had ceased before the complaint. *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1159 (9th Cir. 1989) (applying *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987), to RCRA action regarding historic activity that ceased before complaint was filed and even before the enactment of RCRA). Other courts around the country agree. *See, e.g.*, *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (applying *Gwaltney* to RCRA's identical language); *S. Rd. Assocs. v. Int'l Bus. Machs. Corp.*, 216 F.3d 251, 257 (2d. Cir. 2000) (holding that a "historical act cannot support a claim for violation of 42 U.S.C. § 6945(a) and 40 C.F.R. § 257.3–4(a)"); *Conn. Coastal Fishermen's Ass'n v. Remington Arms Co.,* 989 F.2d 1305, 1312-13, 1315 (2d Cir. 1993) (dismissing complaint alleging "wholly past" RCRA violation under *Gwaltney*); *Conservation Law Found. v. Shell Oil Co.*, 628 F. Supp. 3d 416, 439 (D. Conn. 2022) (dismissing open-dumping claim that did not allege open dumping at time complaint was filed); *Chart v. Town of Parma*, 2012 WL 3839241, at *9 (W.D.N.Y. Aug. 28, 2012)

(same); *Verse Two Props., LLC v. MedPlast Fremont, Inc.*, 2015 WL 6955133, at *4 (N.D. Cal. Nov. 10, 2015) ("Although the hazardous substance remains on the Property, there are no allegations that any of the Defendants continue to operate on the Property."); *Bd. of Comm'rs of Cnty. of La Plata v. Brown Grp. Retail, Inc.*, 598 F. Supp. 2d 1185, 1201 (D. Colo. 2009). ("Once a defendant is no longer an owner or operator of a polluting facility, it has 'no control over the pollution source' and would have no ability to 'bring itself into complete compliance.") (cleaned up).

Nor do any supposed lingering effects amount to a violation. As the Second Circuit has explained, past dumping is not a present violation because the prohibited act is introducing a substance that causes exceedances of standards, *not* the substance's later action in the environment. *S. Rd. Assocs.,* 216 F.3d at 256–57; *see also June v. Town of Westfield*, 370 F.3d 255, 259 (2d Cir. 2004) (requiring proof that defendant "continued to introduce" substances that worsened exceedances). Federal courts in California apply the same rule: lingering contamination is not current open-dumping without current *introduction* of pollutants, and a past violation is not actionable where there is no reasonable likelihood of recurrence. *N. Cal. River Watch v. Fluor Corp.*, 2014 WL 3385287, at *9–10 (N.D. Cal. July 9, 2014) ("The fact that unremediated pollutants remain on the Site is not sufficient to allege an ongoing violation of the open dumping prohibition."); *N. Cal. River Watch v. Exxon Mobil Corp.*, 2010 WL 3184324, at *5 (N.D. Cal. Aug. 11, 2010) (former site owner not liable where "there is no reasonable likelihood that defendant will continue to pollute").

All Athens deliveries ceased months before the April 2025 complaint and December 2024 pre-suit notice, and Athens has no intention of resuming land application. (UF 32.) The open-dumping claim therefore fails as a matter of law.

### 2. In the Alternative, Plaintiffs Lack Evidence That Any Site Poses a Reasonable Probability of Adverse Effects Under 40 C.F.R. § 257.3.

Actionable open-dumping is limited to facilities and practices that "pose a reasonable probability of adverse effects on health or the environment" under § 257.3. 40 C.F.R. § 257.1. Plaintiffs must identify a specific Part 257 criterion and competent evidence tying Athens' material to it.[5]

***State Standards do not establish a Part 257 violation***. Plaintiffs rely on California Title 14, not Part 257, but a state standard supports a RCRA citizen suit only if it becomes effective pursuant to RCRA—that is, it implements the federal minimum criteria and is no more stringent. *Ashoff v. City of Ukiah*, 130 F.3d 409, 411–12 (9th Cir. 1997); *Covington v. Jefferson Cnty.*, 358 F.3d 626, 641–42 (9th Cir. 2004). For both the initial adoption of California's land application requirements and the recent amendments, CalRecycle found that there are no federal laws or regulations comparable to the proposed regulation and therefore do not duplicate or conflict with any federal law or regulation. (CalRecycle, *Short-Lived Climate Pollutants (SLCP): Organic Waste Methane Emissions Reductions, Initial Statement of Reasons*, at 4 (2020), available at https://calrecycle.ca.gov/laws/rulemaking/archive/2020-2/slcp/; CalRecycle, *Illegal Disposal Permanent Regulations, Initial Statement of Reasons*, at 26 (2026), available at https://calrecycle.ca.gov/laws/rulemaking/permanentid/.) Federal land application regulations only address treated sewage sludge, or biosolids under EPA's Standards for the Use or Disposal of Sewage Sludge. 40 C.F.R. pt. 503. The federal regulations do not

---

[5] Should Plaintiffs invoke Part 258 criteria instead, that section is wholly inapplicable because such criteria apply only to owners and operators of certain municipal solid waste landfills ("MSWLs"). 40 C.F.R. § 258.1(b). The Sites are not MSWLs, nor has Athens owned or operated them. (UF 19.) Any other solid waste disposal practices are subject to the criteria contained in Part 257, unless regulated as hazardous waste under subtitle C of RCRA. 40 C.F.R. § 258.1(b). Additionally, Part 258 governs only MSWLs that "receive household waste," 40 C.F.R. §§ 257.1(c)(10), 258.1, 258.2. There is no evidence that Athens shipped household-waste (i.e. "black-bin" waste) to the Sites. American Organics does not receive black-bin waste and Crown segregates black-bin material from any the C&D-fines and green-waste stream sent to the Sites. (UF 28-29.) The presence of physical contamination in land application material does not transform a land application unit into a MSWL.

address the additional standards for land application under California's Title 14 standards, which exceed federal standards as they also regulate solid organic compostable material as at issue in this case. Title 14 therefore cannot supply the missing Part 257 criterion.

Regardless, none of Plaintiffs' evidence demonstrates a triable issue on any Part 257 criterion:

***Endangered species (§ 257.3-2)***. Section 257.3-2 prohibits the "taking" of federally protected endangered or threatened species. 40 C.F.R. § 257.3-2. "Take" under the Endangered Species Act "means to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a listed species (16 U.S.C. § 1532(19)), and "harm" includes "significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering" (50 C.F.R. § 17.3). It is not enough to show that land was "merely capable of supporting a protected species" and speculative evidence that a species "may" exist is "woefully insufficient." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1244 (9th Cir. 2001). Plaintiffs' expert identifies only potential habitat for the Mojave desert tortoise at one site but never confirmed any desert tortoise present at any Site prior to or after the material deliveries, let alone any evidence of a taking. (UF 46.) Plaintiffs therefore cannot establish a § 257.3-2 violation.

***Surface water (§ 257.3-3)***. Plaintiffs allege that some of the Sites contain ephemeral streams (i.e. dry desert washes) that could potentially take contaminants offsite to larger water sources. (FAC ¶ 10.) But this surface-water theory fails because § 257.3-3 is not enforceable through a RCRA citizen suit and addresses discharges to "waters of the United States" ("WOTUS"), which are regulated under the Clean Water Act's NPDES framework, not RCRA § 257.3-3. *ARC Ecology v. U.S. Maritime Admin.*, 2010 WL 235065, at *2-4 (E.D. Cal. Jan. 21, 2010); *Hackensack Riverkeeper, Inc. v. Del. Ostego Corp.*, 450 F. Supp. 2d 467, 486–87 (D.N.J. 2006); *Courtland Co. v. Union Carbide Corp.*, 2023 WL 6331069, at *87-88 (S.D. W. Va. Sept. 28, 2023). "Waters of the United States" are defined under

the Clean Water Act as "only those relatively permanent, standing or continuously flowing bodies of water 'forming geographical features' that are described in ordinary parlance as 'streams, oceans, rivers, and lakes.'" *Sackett v. EPA*, 598 U.S. 651, 671 (2023) (cleaned up) (quoting *Rapanos v. United States*, 547 U.S. 715, 739 (2006) (plurality)). It does not include "channels through which water flows intermittently or ephemerally, or channels that periodically provide drainage for rainfall." *Rapanos*, 547 U.S. at 739. It is "beyond parody" to stretch WOTUS to reach "dry arroyos in the middle of the desert." *Id.* at 734. The ephemeral desert streams and other temporary water collections raised by Plaintiffs are not relatively permanent or continuously flowing WOTUS. (UF 50.) Plaintiffs offer no discharge evidence or fate-and-transport analysis showing a complete pathway from any Site to a qualifying WOTUS. (UF 53-54.)

***Groundwater (§ 257.3-4)***. Section 257.3-4 prohibits "contaminat[ing] an underground drinking water source beyond the solid waste boundary." 40 C.F.R. § 257.3-4; *see also* 40 C.F.R. pt. 257, app. I (Maximum Contaminant Levels). There is no evidence that any Site has contaminated groundwater or a drinking-water source. According to Plaintiff's expert, groundwater at Three Points, Irwin, and Kern is roughly 150–350+ feet below ground, over 500 feet below ground at WPL, and roughly 77–106 feet below ground at New West Tractor. (UF 51.) Plaintiffs did not sample groundwater or conduct a fate-and-transport analysis of the potential migration of contamination from the surface to groundwater (*i.e.*, vadose zone) or otherwise to a drinking-water source. (UF 52-54.) Without the testing, there can be no violation. *O'Leary v. Moyer's Landfill, Inc.*, 523 F. Supp. 642, 655 (E.D. Pa. 1981) (citing 40 C.F.R. § 257.4 and *id.* pt. 257, app. I)).

***Disease and vectors (§ 257.3-6)***. A facility must minimize the on-site population of disease vectors through the periodic application of cover material or other techniques as appropriate. *See id.* at 655-56 ("[T]he federal regulation requires only sufficient application to 'minimize' the 'on-site population of disease vectors.'"). Plaintiffs have made no

showing of any rodents, flies, or mosquitoes, let alone any vectors to be minimized requiring any cover at any site.

***Air (§ 257.3-7)***. A facility or practice shall not engage in open burning of residential, commercial, institutional or industrial solid waste. There is no evidence supporting Plaintiffs' conjecture that land-applied mulch did, could, or will ever spontaneously combust. (UF 55-59.) One fire occurred at Three Points more than six months after Athens ceased sending materials there, but no cause was determined. (UF 55-56.) Further, while Athens contends that an accidental fire is insufficient to find the site "engaged in open burning,"[6] there is no evidence that any burning occurred during the time of any deliveries from Athens to Three Points or any other site, nor is there any evidence attributing any fires to any materials from Athens. Athens therefore could not have engaged in any open burning.

***Safety (§ 257.3-8)***. Plaintiffs offer no evidence that the Sites pose a safety risk as defined by Section 257.3-8 (explosive methane, fires, bird hazards to aircraft, uncontrolled public access). To the extent Plaintiffs theorize that spontaneous combustion of mulch poses a threat, there is no such evidence, as discussed below, so Plaintiffs cannot establish a § 257.3-8 violation. (UF 55-59.)

For these reasons, the open-dumping claim fails as a matter of law.

### C. Summary Judgment Should Be Granted on Plaintiffs' § 6972(a)(1)(B) Endangerment Claim.

Separately from open-dumping, RCRA authorizes prospective injunctive relief against a past or present generator, transporter, owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present disposal of solid or hazardous waste[7] that "may present an imminent and substantial

[6] "Engage in something" is defined as "to take part in something." Engage in Something, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/engage-in (last visited Sept. 18, 2026).

[7] Solely for purposes of this argument, Athens does not dispute that the material delivered to the Sites is a solid waste.

endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. . . [,] RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards . . . ." *Meghrig*, 516 U.S. at 483. "[S]ummary judgment [in favor of a defendant] is appropriate where a plaintiff has (1) established only a speculative prospect of future harm and (2) has not provided sufficient information for a reasonable factfinder to find the harm at issue rises to the level of substantial endangerment." *Living Lands, LLC v. Cline*, 657 F. Supp. 3d 831, 848 (S.D.W. Va. 2023). The threat must be both ***immediate*** and ***serious***. *Price v. U.S. Navy*, 39 F.3d 1011, 1019 (9th Cir. 1994); *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 211 (2d Cir. 2009).

Under RCRA, an endangerment can only be "imminent" if it threatens to occur immediately. In other words, "there must be a threat which is present *now*, although the impact of the threat may not be felt until later." *Price*, 39 F.3d at 1019–20 ("A finding of 'imminency' does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present."). "The meaning of [Section 6972(a)(1)(B)'s] timing restriction is plain: An endangerment can only be 'imminent' if it 'threaten[s] to occur immediately,' . . .and the reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger." *Meghrig*, 516 U.S. at 485-486.

Establishing that a threat is "substantial," in turn, requires a serious, receptor-specific risk through a complete and realistic exposure pathway, with evidence addressing exposure, dose, duration, toxicity, and degree of harm. *Metacon*, 575 F.3d at 211–15; *Courtland*, 2023 WL 6331069, at *76–77. Mere presence or a screening exceedance does not supply that proof. The threat cannot be remote in time, speculative in nature, or de minimis in degree. *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1083 (D. Or. 2024) (quoting *Lincoln Props., Ltd. v. Higgins,* 1993 WL 217429, at

*13 (E.D. Cal. Jan. 21, 1993)). The Ninth Circuit rejects conditional "could be" opinions untethered to observed conditions, sampling, or a standard for when risk will materialize. *Ecological Rights Found.*, 874 F.3d at 1101.

Plaintiffs cannot prove that any purported threat to either human health or the environment may present an imminent and substantial endangerment. Plaintiffs' experts assert that some of the material delivered to the Sites contain chemicals above screening criteria and have other properties potentially harmful to health. However, there is no evidence of any confirmed pathway of an exposure affecting human health, let alone at a dose, toxicity, and degree-of-risk that is either an imminent or substantial endangerment. Likewise, Plaintiffs cannot show that the material or its contents cause an imminent, serious threat to the environment. *City of Fresno v. United States*, 709 F. Supp. 2d 934, 941-42 (E.D. Cal. 2010) (granting summary judgment where plaintiff's expert testimony "did not state with specificity the degree of potential exposure risk to humans and the environment . . . or that there were realistic pathways of exposure").

**1. Plaintiffs Cannot Demonstrate Immediate Human-Health Endangerment.**

Plaintiffs allege that the material on sites contains contamination, and that constituents present a threat to human health through airborne dust and smoke and migration through the vadose zone to groundwater and downgradient drinking-water wells. (FAC ¶ 4.) They also allege that mulch can self-heat and spontaneously combust, creating fire and smoke exposure for people, and they advance a future crop-growing or agricultural-use theory. (Smith Decl., Exs. 23 & 25; Ex. 20 (Perez Report at 14–15, 62-64 (Opinion 6)); Ex. 24 (Perez Dep. at 114:12–116:3).

***Chemical Contamination.*** Plaintiffs' expert, Perez, purported to analyze some of the materials from the Sites but he only collected and characterized four samples of the land-applied material itself at WPL and Kern sites, six at Irwin, eight at Three Points, and none at New West Tractor. (UF 61.) Also, no samples of the native soil beneath the

materials were taken or taken at Plaintiffs' properties. (UF 62). Perez concedes that the samples were not representative of the parcels. (UF 63.) Plaintiffs rely on those scant detections to assert a human-health risk and separately advance a crop or agriculture theory. (UF 65.) A few constituents, such as lead and PFAS, were detected in a couple samples above screening levels for soils. (UF 64.) Yet, Perez concedes he considers the screening levels as "reference points for identifying constituents of concern," not as thresholds of serious harm. (*Id.*)

Besides Perez's concession that he could not indicate if the samples were representative of the conditions across the multi-acre properties, the presence of a chemical or exceedance of a screening level is not itself substantial endangerment to human health or the environment. Neither establishes a complete, realistic pathway, actual exposure, or serious effect. *S. Rd. Assocs.*, 216 F.3d at 259 ("the mere presence of contaminants, even at high concentrations, does not constitute an imminent and substantial endangerment"); *Schmucker v. Johnson Controls, Inc.*, 477 F. Supp. 3d 791, 810–12 (N.D. Ind. 2020), *aff'd*, 9 F.4th 560 (7th Cir. 2021); *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 399 F.3d 248, 261 (3d Cir. 2005)*; City of Fresno*, 709 F. Supp. 2d at 943 ("To show an 'imminent and substantial' threat, the plaintiff must do more than establish the presence of solid or hazardous wastes at a site.").

*Metacon* demonstrates that this kind of testimony and report by Plaintiffs' expert is wholly insufficient. In *Metacon*, an expert described a "potential exposure risk" from spent lead but performed no risk assessment, identified no realistic exposure pathways, and did not quantify the degree of risk, leading the Second Circuit to affirm summary judgment. 575 F.3d at 211–15. *Courtland* likewise held that mere presence, even at high concentrations, and screening-level exceedances were insufficient where the expert said a risk assessment was necessary and none was performed. 2023 WL 6331069, at *76–77. *City of Fresno* reached the same result where the plaintiff's expert did not specify potential exposure or realistic pathways. 709 F. Supp. 2d at 940.

***Airborne dust and smoke***. Plaintiffs allege their properties have been "repeatedly engulfed" by toxic smoke and contaminated dust originating from the sites (FAC ¶¶ 31-32) but identify no completed air dispersal pathway or receptor-specific risk. *See H & H Holding, L.P. v. Chi Choul Lee*, 2014 WL 958878, at *5 (E.D. Pa. Mar. 6, 2014) (granting summary judgment where plaintiff did not provide a risk assessment or other testing to demonstrate the magnitude of the possible risk). No site-specific air monitoring connects any chemical from any source to a nearby person (a receptor) at a harmful dose. (UF 41-44.) Perez supplied no inhalation risk assessment or any type of risk assessment at all. (UF 45.) Plaintiffs offer no site-specific or source-specific monitoring, dispersion modeling, or apportionment analysis that airborne dust or smoke from any site or any generator will reach their properties or any other receptor now or in the near term. (UF 41.) Indeed, Dalby claims she did not need to do air dispersion modeling to understand the spread of dust. (*Id*. ("Modeling wasn't necessary based on my 18 years at working on a solid waste facility. Windblown debris travels very far.").) Plaintiffs attribute major emissions to fires at other sites, making this theory depend on regional events rather than a present pathway from these Sites. (UF 41.) The record therefore does not show an imminent and substantial airborne risk caused by the sites or by Athens specifically.

***Migration to drinking water***. Plaintiffs claim constituents migrate through the vadose zone to groundwater and downgradient wells, but there is no evidence that this has occurred. Plaintiffs have not shown a completed pathway that could produce imminent, serious receptor-specific drinking-water harm. Neither soil nor groundwater samples were taken and analyzed. As noted, groundwater at Three Points, Irwin, and Kern lies roughly 150 to 350+ feet below ground; over 500 feet at WPL; and 77 to 106 feet at New West Tractor. (UF 51.) Thick vadose zones, low precipitation, and stable well chemistry further undercut present migration. (UF 52.) Perez hypothesized pathways could exist for contaminants to reach groundwater and surface water but performed no sampling or fate-and-transport analysis and did not establish when or at what concentration any constituent

would reach groundwater. (UF 53-54.) Without doing so, he was unable to quantify any risk to a potential receptor. (*Id.*) Untested soil and water does not establish a threat of serious harm and unknown future migration does not establish a present threat.

***Fire and smoke exposure to people***. Plaintiffs' fire theory fares no better. While a threat of fire could be serious, Perez's spontaneous combustion theory does not identify a present fire risk condition. A fire that might occur only if future conditions change is not a present threat. *Crandall v. City & County of Denver, Colo.*, 594 F.3d 1231, 1239 (10th Cir. 2010); *Ecological Rights Found.*, 874 F.3d at 1101. His opinion lacks site-specific analysis of depth, moisture, heat retention, or pile dimensions. (UF 57.) On the other hand, Darby, a certified compost professional, found no active self-heating, smoldering, combustion, or conditions supporting spontaneous combustion. (UF 58-59.) Perez's reliance on the Veronica Fire (at Three Points) is misplaced: he asserts it was a spontaneous mulch fire, yet the cause was undetermined, Tetra Tech found no internal heating in the burn scar, and the record contains alternative ignition evidence. (UF 56.)) Perez claims that the "risk persists," but with no site-specific analysis of the likelihood of a fire to occur or the risk to any receptors due to smoke exposure cannot be credited. (UF 57.) The opinion therefore does not show a serious, receptor-specific human-health risk from fire or smoke.

***Future crop-growing.*** Perez asserted in deposition for the first time that the constituents could become harmful through consumption of future agricultural production. (UF 65.) A future agricultural use is contingent on an event that has not occurred and is not present or even near-term. It therefore cannot establish a present or imminent threat to human health. "It is not enough under RCRA that in the future someone may do something with solid waste that, absent protective measures, can injure human health." *Crandall*, 594 F.3d at 1239; *see also Schmucker*, 477 F. Supp. 3d at 814.

### 2. Plaintiffs Cannot Demonstrate Immediate Environmental Endangerment.

Plaintiffs' experts, Chow and Dalby, opine that land application reduced habitat suitability[8] and the "potential to occur" for special-status species. They describe the habitat condition as an "imminent risk until remediation" and further allege that the material poses an imminent threat to jurisdictional and surface waters until remediation. (Smith Decl., Ex. 18 (Chow/Dalby Report at 2–3, 30–31.) None are sufficient to demonstrate imminent and substantial endangerment.

***Habitat, wildlife, and plants***. Chow merely offers desktop potential habitat-suitability opinions based on a theoretical "potential to occur" within a five-mile-buffer query and generic habitat descriptions, without any field confirmation. Chow and Dalby cannot state that any special-status species was ever present or using any Site. No protocol-level field surveys were performed at any Site for any species. (UF 47.)

A protocol-level survey is the agency-prescribed, species-specific field search used to confirm whether a special-status species is actually present on or absent from a given parcel, and it is the only reliable way to establish occupancy. (*Id.*) Chow concedes that a habitat assessment only decides whether a survey is warranted and presence cannot be established without a survey. (UF 71.) The result is that no witness can place any special-status animal on any Site—Chow "did not observe any of the special status species on the site" and found no burrow, nest, scat, or track anywhere, including the parcels she walked in full—so Plaintiffs have only a theoretical "potential to occur," not a present, receptor-specific threat. (UF 47-48.)

Importantly, Chow did no population-level analysis to determine whether any alleged loss of habitat at any of the Sites would reduce a local sensitive species population below self-sustaining levels or otherwise significantly impact the species given the abundant comparable habitat surrounding the Sites. (UF 72.) Without this regional context,

[8] Chow and Dalby deferred toxicological testing, leaving no basis to assess dose or degree of harm for any ecological receptor from the materials' characteristics. (UF 70.)

neither an imminent or substantial endangerment can be demonstrated. Moreover, at best, Chow can only opine that based on her desk top analysis, the Sites might have supported habitats prior to the material delivery for theoretical potential (but unknown) for certain special-status wildlife species. Yet, Chow concedes that the native vegetation for at least three sites had already been disturbed by non-native grassland or agricultural activity prior to the material deliveries. (UF 49.) Chow's site visits did nothing to confirm any species' presence, resulting in a record without a single confirmed detection—no individual, burrow, scat, track, nest, or other sign—of any special-status wildlife species at any Site, including New West Tractor and WPL, before or after the delivery of the material at issue. (UF 48.) Rather, her opinion is conditional on future species presence and future testing, not a present receptor-specific threat. (UF 71-73.) *Ecological Rights Foundation* rejects a conditional "could be" opinion untethered to observed conditions or sampling (874 F.3d at 1101), and *Metacon* rejects a potential-exposure opinion lacking realistic pathways, risk assessment, and quantified risk (575 F.3d at 211–15). Plaintiffs identify no existing receptor exposed to Athens material and no present threat to one because nothing has been shown to be present.

***Jurisdictional waters***. The jurisdictional-waters showing fails first for lack of substantial endangerment. Dalby concedes there are no waters of the United States at issue (UF 50) but points to potential impacts to possible ephemeral (*i.e.* dry) streams that might be protected in California. (UF 75.) However, her claim that these ephemeral streams even exist on any of the sites rests merely on the USGS 3D Hydrography desktop layer, not a field delineation, and concedes that "[m]uch more additional field work" would be necessary to determine any impacts. (UF 74.) Indeed, the purported ephemeral streams, which could not be located during Chow's site visit,[9] were not confirmed by other acceptable means, including the stream ingress and egress from any of the Sites. (UF 77-78.) At best, with respect to WPL, Chow merely observed some evidence of some

[9] Dalby, responsible for the water and remediation portions of the report, did not visit any site and relied on Chow's observations. (UF 80.)

ephemeral wash activity near to where she thought it would have connected to the Eller Slough, but she was unable to determine where the Eller Slough was located on the Site in the first place. (UF 76.) Further, Dalby did not know the last time there was any flowing water in these streams. (UF 50.) Regardless, no surface water, soil or groundwater sampling was done and no modeling was performed to support any asserted infiltration theory. (UF 79.)

Likewise, Dalby's jurisdictional waters opinion relies on an asserted "high potential" for infiltration, which is conditional and untethered to a present, completed pathway. The opinion rests on the unverified and high-level USGS 3D Hydrography Program review (i.e. "desktop study") rather than a field-verified pathway. (UF 74.) The bald conclusion that material poses "an imminent threat to the environment until remediation occurs" does not establish a present pathway or when material will reach a receptor. There must be more than a mere desktop possibility.

Without water, soil or groundwater data, or a quantified ecological exposure or receptor-specific harm showing, Plaintiffs cannot establish an imminent, serious environmental risk to any water source. *See City of Fresno*, 709 F. Supp. 2d at 941-42. Plaintiffs show no present environmental endangerment.

## V. CONCLUSION

For all the foregoing reasons, Athens' Motion should be granted.

Dated: September 18, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Peter R. Duchesneau*
Peter R. Duchesneau
*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC.
DBA ATHENS SERVICES and
ATHENS DISPOSAL COMPANY, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendants Arakelian Enterprises, Inc., dba Athens Services and Athens Disposal Company, certifies that this brief contains 25 pages (excluding caption page, tables of contents and authorities, signature blocks, and this certification of compliance), which complies with the word limit of L.R. 11-6.1.

The undersigned further certifies, in compliance with the Court's Standing Order, that this brief was not drafted by artificial intelligence. AI tools such as Harvey and WestLaw Co-Counsel were utilized to collect and assess relevant case law, review and organize selected produced documents and deposition transcripts, and grammar and spellcheck. The brief has been cite-checked by multiple individuals and we are responsible for any transcription errors.

Dated: September 18, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Peter R. Duchesneau*
Peter R. Duchesneau
*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC. DBA ATHENS SERVICES and ATHENS DISPOSAL COMPANY, INC.