MANATT, PHELPS & PHILLIPS, LLP
Peter R. Duchesneau (Bar No. CA 168917)
pduchesneau@manatt.com
David T. Moran (Bar No. CA 217647)
dmoran@manatt.com
Thomas A. Whittington (Bar No. CA 355949)
TWhittington@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Douglas J. Smith (Bar No. DC 1028963)
djasmith@manatt.com
1700 M Street NW, 4th Floor
Washington, D.C. 20036
Telephone: (202) 585-6500
Facsimile: (202) 585-6600

*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC. DBA ATHENS SERVICES and ATHENS DISPOSAL COMPANY, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA – WESTERN

KRISTINA BROWN and ASHLEY MROZ,

Plaintiffs,

v.

ARAKELIAN ENTERPRISES, INC. et al.,

Defendants.

Case No. 2:25-cv-2855-MWC-PD
Hon. Michelle Williams Court

**DEFENDANTS ARAKELIAN ENTERPRISES, INC. AND ATHENS DISPOSAL COMPANY, INC.'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

[Filed Concurrently with Notice of Motion and Motion for Summary Judgment; MP&As; Declaration of Douglas J. Smith; Declaration of Enrique Gonzalez; Declaration of Jennifer Eernisse; Declaration of Samantha Winkle; and [Proposed] Order]

| | |
|---|---|
| Hearing Date: | November 6, 2026 |
| Time: | 1:30 p.m. |
| Location: | Courtroom 6A |
| Date Filed: | April 3, 2025 |
| Trial Date: | February 8, 2027 |

Pursuant to Central District of California Local Rule 56-1, Defendants Arakelian Enterprises, Inc. dba Athens Services and Athens Disposal Company, Inc. (collectively, "Athens") submits this Statement of Uncontroverted Facts in Support of Athens' Motion for Summary Judgment on the First Amended Complaint filed by Plaintiffs Kristina Brown and Ashley Mroz (collectively, "Plaintiffs").

## UNCONTROVERTED MATERIAL FACTS

**Plaintiffs, the Sites, and Distances at Issue**

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 1. Plaintiff Kristina Brown owns property located at 18500 West Avenue F8, Lancaster, California 93536, and resides in Los Angeles (Silver Lake), California. | Dkt. 196, First Amended Complaint ("FAC") ¶ 29 (identifying Brown's Lancaster property and residence).<br><br>Declaration of Douglas J. Smith ("Smith Decl."), **Ex.1**, Deposition of Kristina Brown, ("Brown Dep.") at 46:10-15 (residence address). |
| 2. Plaintiff Ashley Mroz resides at 50534 259th Street West, Lancaster, California 93536. | FAC ¶ 30 (identifying Mroz's residence).<br><br>Smith Decl., **Ex. 3**, Deposition of Ashley Mroz ("Mroz Dep.") at 45:19-25 (residence address). |
| 3. Brown visits the Lancaster ranch one to three times per week. | Smith Decl., **Ex. 1**, Brown Dep. at 54:17-23 (visits the ranch one to three times per week). |
| 4. There are at least 50 unlawful-disposal parcels in the Antelope Valley. | FAC ¶ 65 (alleging at least 50 unlawful-disposal parcels in the Antelope Valley). |
| 5. There were at least 42 mulch or trash fires in the Antelope Valley between 2020–2024. | FAC ¶ 62 (alleging the Los Angeles Fire Department responded to 42 mulch/trash fires predominantly in the Antelope Valley between 2020–2024) |
| 6. Plaintiffs served a Notice of Intent to Sue dated December 3, 2024. | Smith Decl., **Ex. 31**, Notice of Intent to Sue (Dec. 3, 2024), BROWN006934. |
| 7. Plaintiffs filed their original Complaint on April 3, 2025. | Dkt. 1 (filed Apr. 3, 2025). |
| 8. Plaintiffs allege that Athens delivered land-application material to five sites: Irwin, Three Points, Kern, WPL, and New West Tractor (the "Sites"). | FAC ¶ 152 (identifying the five Sites alleged to have received Athens material). |
| 9. The Irwin Site is located at 18350 West Avenue F-8, Lancaster, California 93536 | FAC ¶ 41. |

| | |
|---|---|
| (APN 3240-007-001), immediately adjacent to Brown's property and approximately 8.8 miles from Mroz's home. | Smith Decl., **Ex. 15**, Expert Report of Rene A. Perez, PG, CHG (Earth Forensics, Inc.) ("Perez Report") § 4.1.4.<br><br>Smith Decl., **Ex. 16**, Expert Report of Tim Sturtz, Ph.D. (ESA) ("Sturtz Report") at 11 (Irwin immediately adjacent to Brown and approximately 8.8 miles from Mroz). |
| 10. The Irwin Site was owned by Sean Irwin. | FAC ¶ 41.<br><br>Smith Decl., **Ex. 4**, Deposition of Sean Irwin (April 30, 2026) ("Irwin Dep. I") at 33:1-13. |
| 11. The Three Points Site is located at 49155 Three Points Road, Lancaster, California 93536 (APNs 3279-001-003, 3279-001-036, and 3279-001-039 through 3279-001-043), approximately 1.7 miles from Mroz's home and 8 miles from Brown's property. | FAC ¶ 43.<br><br>Smith Decl., **Ex. 15**, Perez Report, § 4.1.2.<br><br>Smith Decl., **Ex. 16**, Sturtz Report at 10 (Three Points approximately 1.7 miles from Mroz and 8 miles from Brown). |
| 12. The Kern Site is at the intersection of 280th Street West and Patterson Road in unincorporated Kern County, California (APN 25447022), approximately 3.5 miles from Mroz's home and 11.7 miles from Brown's property. | FAC ¶ 43.<br><br>Smith Decl., **Ex. 15**, Perez Report, § 4.1.1.<br><br>Smith Decl., **Ex. 16**, Sturtz Report at 11 (Kern approximately 3.5 miles from Mroz and 11.7 miles from Brown). |
| 13. The Three Points Site and Kern Site are owned by Shin Family Trust and Jung M. Shin operated them. | FAC ¶¶ 43-44. |
| 14. The WPL Site is located south of the intersection of Avenue P and 240th St. in Los Angeles County (APNs 3091-014-002 through 3091-014-004), more than 50 miles from Mroz's home and more than 40 miles from Brown's property. | Smith Decl., **Ex. 15**, Perez Report, § 4.1.3.<br><br>Smith Decl., **Ex. 16**, Sturtz Report at 11 (WPL and New West Tractor each more than 50 miles from Mroz and more than 40 miles from Brown). |
| 15. The WPL Site is owned by WPL Holdings, LLC and was acquired by Tracy Welch under a lease to own agreement. | FAC ¶¶ 46, 48.<br><br>Smith Decl., **Ex. 8**, Deposition of Tracy Welch (7/9/26) ("Welch Dep. II") at 13:8-14:24. |
| 16. The New West Tractor Site is located in San Bernardino County (APNs 046108623, 046108624, and 046108626), more than 50 miles from Mroz's home and more than 40 miles from Brown's property. | FAC ¶ 45.<br><br>Smith Decl., **Ex. 15**, Perez Report, § 4.1.5.<br><br>**Smith Decl., Ex. 16,** Sturtz Report at 11 (WPL and New West Tractor each more than 50 miles from Mroz and more than 40 miles from Brown). |

| | |
|---|---|
| 17. The New West Tractor Site is owned by New West Tractor, LLC. | FAC ¶ 45. |

**Athens's Role and the Materials Delivered to the Sites**

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 18. Athens produced and shipped material to the Sites from two facilities: American Organics and Crown Recycling. | Smith Decl., **<u>Ex 6</u>**, Deposition of Reece Hammer ("Hammer Dep.") at 29:24-30:4; 35:11-14.<br><br>Smith Decl., **<u>Ex. 9</u>**, Deposition of Enrique Gonzalez ("Gonzalez Dep.") at 25:4-7.<br><br>Smith Decl., **<u>Ex. 15</u>**, Perez Report at 15 (identifying American Organics and Crown deliveries). |
| 19. Athens did not own or operate any of the Sites. | Declaration of Samantha Winkle, ¶ 3.<br><br>Declaration of Enrique Gonzalez, ¶ 3.<br><br>Smith Decl., **<u>Ex. 22</u>**, Athens' Further Supplemental Response to Brown's First Interrogatories (Aug. 14, 2026), No. 8.<br><br>FAC ¶ 152.<br><br>Smith Decl., **<u>Ex. 7</u>**, Deposition of Tracy Welch (5/29/26) ("Welch Dep. I") at 38:14-16;39:6-9).<br><br>Smith Decl., **<u>Ex. 4</u>**, Irwin Dep. I at 32:14-33:13.<br><br>Smith Decl., **<u>Ex. 10</u>**, Deposition of Jung M. Shin ("Shin Dep.") at 33:11-19. |
| 20. American Organics shipped material to the WPL, New West Tractor, and Irwin Sites. | FAC ¶ 152. |

| | |
|---|---|
| 21. Crown Recycling shipped material to the Irwin, Three Points, and Kern Sites.[1] | FAC ¶ 152.<br><br>Smith Decl., **Ex. 5**, Deposition of Sean Irwin, Vol. III (Aug. 14, 2026) ("Irwin Dep. III") at 45:21-46:8 (Crown material was redirected to Kern in February 2024). |
| 22. American Organics delivered material to the WPL Site from April 2021 to September 2024. | Declaration of Jennifer Eernisse ("Eernisse Decl."), **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites.<br><br>Smith Decl., **Ex. 7**, Welch Dep. I at 106:10-14. |
| 23. American Organics delivered material to the New West Tractor Site from July 2023 to March 2024. | Smith Decl., **Ex. 15**, Perez Report at 20–21 (American Organics delivery periods).<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 24. American Organics delivered material to the Irwin Site from June 14, 2024 to August 29, 2024. | Smith Decl., **Ex. 15**, Perez Report at 19 (American Organics delivery periods).<br><br>Smith Decl., **Ex. 5**, Irwin Dep. III at 169:23-170:3<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 25. Crown delivered material to the Three Points Site from September 21, 2020 to December 14, 2023. | Smith Decl., **Ex. 5**, Irwin Dep. III at 146:10-12 (Crown deliveries ended at Three Points in December 2023).<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet |

[1]For purposes of this Motion only, Athens accepts that Crown material was shipped to the Kern Site, with the last delivery on February 28, 2024, even accepting the later date.

| | |
|---|---|
| | (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites.<br><br>Smith Decl., **Ex. 5**, Irwin Dep. III 145:16-18. |
| 26. Crown delivered material to the Irwin Site from December 15, 2023 to February 15, 2024. | Smith Decl., **Ex. 15**, Perez Report at 19 (Crown deliveries to Irwin).<br><br>Smith Decl., **Ex. 5**, Irwin Dep. III at 40–41, 144:12–145:18 (Crown supply to Irwin ended before the Kern deliveries).<br><br>Eernisse Decl., ¶ 8, **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 27. Crown delivered material to the Kern Site from February 16, 2024 to February 28, 2024.[2] | Smith Decl., **Ex. 15**, Perez Report at 17 (Crown deliveries to Kern).<br><br>Smith Decl., **Ex. 5**, Irwin Dep. III at 51:6-17 (Crown material was redirected to Kern in February 2024).<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 28. American Organics does not receive municipal solid waste ("black bin" waste). | Declaration of Samantha Winkle, ¶ 4. |
| 29. While Crown does process municipal solid waste at its facility, this municipal solid waste has never been comingled with the materials that are processed to generate C&D Fines or Processed Green Waste. | Smith Decl., **Ex. 9**, Gonzalez Dep. at 117:3-19, 148:5-149:2 (distinguishing the MSW stream from recovered beneficial soil material).<br><br>Declaration of Enrique Gonzalez, ¶ 5. |

**Athens Ceased Deliveries Before Suit and Does Not Plan to Resume Land Application**

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 30. In February 2024, Crown ceased sending material to any Site. | Smith Decl., **Ex. 5**, Irwin Dep. III at 77:10-78:9. |

[2]For purposes of this Motion only, Athens accepts that Crown material was shipped to the Kern Site, with the last delivery on February 28, 2024, even accepting the later date.

| | |
|---|---|
| | Smith Decl., **Ex 15**, Perez Report at 19 (Crown deliveries to Irwin).<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 31. In September 2024, American Organics ceased further shipment of material to any Site. | Smith Decl., **Ex. 7**, Welch Dep. I at 106:10-14.<br><br>Eernisse Decl., **Ex. 1**, Athens delivery/weigh-ticket spreadsheet (ATHENS036075), compiling the underlying invoices and weigh tickets for deliveries to the Sites. |
| 32. Athens has ended its land-application program and does not intend to reinstate shipments to any of the Sites. | Declaration of Samantha Winkle, ¶¶ 5-6.<br><br>Declaration of Enrique Gonzalez, ¶¶ 6-7.<br><br>Smith Decl., **Ex. 26**, Reece Hammer email (Apr. 22, 2025), ATHENS034915–ATHENS034916 ("I do not intend to reinstate the land application program at this time").<br><br>Smith Decl., **Ex. 6**, Reece Hammer Dep. (Aug. 6, 2026) at 122:4–122:14. |

**Plaintiffs' Contacts with the Sites and Regional Air Sources**

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 33. Mroz visited the WPL and New West Tractor Sites once each during a December 2025 group tour and had not used either Site before the tour. | Smith Decl., **Ex. 3**, Mroz Dep. at 159:19–160:18, 167:22–168:15 (one visit to each Site during the December 2025 group tour; no prior use). |
| 34. Brown first visited New West Tractor in February 2024, after an illegal-dumping task-force meeting, to see the dumping site. | Smith Decl., **Ex. 2**, Brown Dep. Vol. II (July 30, 2026) at 345:17–346:13, 347:18–25, 348:12–14. |
| 35. Brown first learned of WPL Site by following an Athens truck, drives past WPL approximately ten times per year, and entered WPL once. | Smith Decl., **Ex. 2**, Brown Dep. Vol. II at 600:10–602:5 (first learned of WPL Site by following an Athens truck; roughly ten drive-bys per year and one entry to pick up her attorney). |
| 36. Mroz and Brown only visited the Kern Site for investigatory purposes. | Smith Decl., **Ex. 3**, Mroz Dep. at 142:14–25, 146:20–147:9. |

| | |
|---|---|
| | Smith Decl., **<u>Ex. 1</u>**, Brown Dep. at 130:7–133:10 (Kern visit with regulatory personnel). |
| 37. Mroz has only recreated in the general direction of or near the Kern area, not at the Kern parcel. | Smith Decl., **<u>Ex. 3</u>**, Mroz Dep. at 598:14–25 ("My husband, we would go with him dirt bike riding to enjoy the view of the Joshua trees towards Kern."); 420:3-5 ("I drive by Three Points every day. I have to see Kern every single day, but going on the actual site, no").<br><br>Smith Decl., **<u>Ex. 25</u>**, Mroz ROG Responses No. 18 |
| 38. Mroz and Brown have driven around the Antelope Valley, but have had no activity tied to the New West Tractor, WPL, or Kern parcels. | Smith Decl., **<u>Ex. 23</u>**, Kristina Brown's Responses to Interrogatory No. 18 (written discovery describing travel around the Antelope Valley).<br><br>Smith Decl., **<u>Ex. 25</u>**, Ashley Mroz's Responses to Interrogatory No. 18 (written discovery describing travel around the area). |

**Lack of Documented Soil, Air, Water, Fire, and Wildlife Impacts**

| Uncontroverted Material Fact | Supporting Evidence |
|---|---|
| 39. The WPL and New West Tractor Sites are generally upwind of Plaintiffs' properties and prevailing winds run away from their properties. | Smith Decl., **<u>Ex. 16</u>**, Sturtz Report at 11, 17 (Plaintiffs' properties are generally upwind of both Sites). |
| 40. The WPL and New West Tractor Sites' emissions disperse and dilute and are unlikely to have a substantial influence at Plaintiffs' properties. | Smith Decl., **<u>Ex. 16</u>**, Sturtz Report at 3, 10–11, 17 (distance permits dispersion and dilution).<br><br>Smith Decl., **<u>Ex. 17</u>**, John D. Cain Rebuttal, Appendix B (distance and prevailing-wind analysis).<br><br>Smith Decl., **<u>Ex. 32</u>**, Expert Rebuttal Report of Tim Sturtz, Ph.D. (ESA) ("Sturtz Rebuttal") at 2–4 (regional sources and dispersion). |
| 41. Plaintiffs offer no contrary air dispersion modeling, source apportionment analysis, or site-specific sampling tying emissions from any parcel to their properties. | Smith Decl., **<u>Ex. 13</u>**, Perez Dep. at 162:1–165:2.<br><br>Smith Decl., **<u>Ex. 11</u>**, Dalby Dep. at 77:10–21 ("Modeling wasn't necessary based on my 18 years at working on a solid waste facility. |

| | |
|---|---|
| | Windblown debris travels very far.”).<br><br>Smith Decl., **Ex. 16**, Sturtz Report at 11 (discussing emissions sources claimed by Plaintiffs, including the Bravo Fire at an unrelated site). |
| 42. The Los Angeles County LEA identified approximately 70 suspected illegal mulch sites. | Smith Decl., **Ex. 27**, Brown000031 (Los Angeles County email providing site list).<br><br>Smith Decl., **Ex. 28**, Brown000225 (roughly 70 suspected sites identified by Los Angeles County). |
| 43. Other potential sources impact regional air quality, including permitted and mobile sources, agriculture, windblown dust, prescribed and unprescribed fires, and other mulch and dumping sites. | Smith Decl., **Ex. 16**, Sturtz Report at 3, 10. |
| 44. Source-specific air-dispersion modeling, source-apportionment analysis, or site-specific sampling tying dust, smoke, fire, or other emissions from the New West Tractor, WPL, or Kern Sites to Plaintiffs’ properties has not occurred. | Smith Decl., **Ex. 13**, Perez Dep. at 162:1–165:2.<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 77:10–21.<br><br>Smith Decl.**, Ex. 16,** Sturtz Report at 3, 10–12, 16 (no reliable source-specific attribution).<br><br>Smith Decl., **Ex. 36**, John D. Cain, Expert Report dated Aug. 21, 2026 ("Cain Report") at 19–20 (prevailing winds and lack of a credible source-specific pathway).<br><br>Smith Decl., **Ex. 32**, Sturtz Rebuttal at 2–7 (no source-specific attribution methodology). |
| 45. Perez supplied no inhalation or other risk assessment. | Smith Decl., **Ex. 13**, Perez Dep. at 118:18–119:6; 163:2-22. |
| 46. The Mojave desert tortoise was the only federally listed species identified in the biological report and there is no evidence that any tortoise was present at any Site or that any federally protected species was taken, as defined under the Endangered Species Act, prior to or after delivery of material. | Smith Decl., **Ex. 18**, Lehong Chow and Weena Dalby, Biological Resources Technical Report dated Aug. 21, 2026 (“Chow/Dalby Report”) at 81 (identifying Mojave desert tortoise; potential language is conditional).<br><br>Smith Decl., **Ex. 19**, Expert Rebuttal Report of Gregory C. Ainsworth (Bancroft Construction Services) (“Ainsworth Rebuttal”) at 14 (no confirmed presence or take). |

| | |
|---|---|
| | Smith Decl., **Ex. 12**, Deposition of Lehong Chow ("Chow Dep.") at 49:12-24 (no field survey conducted), 142:4-7 (report does not document any take of any species)<br><br>Smith Decl., **Ex. 11**, Deposition of Weena Dalby ("Dalby Dep.") at 55:11–19 (only binocular visual observations; no direct detection methods used to determine species presence or absence). |
| 47. No protocol-level field surveys were performed at any Site for any species. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 2–3, 30–31 (no protocol-level field surveys).<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 5–8 (no protocol-level surveys or confirmed detections).<br><br>Smith Decl., **Ex. 12**, Chow Dep. at 49:12-24 (no field survey conducted), 59:14–60:13, 96:23–101:3, 106:8–22.<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 47:23–50:24 (no survey) 55:11–19 (no direct detection methods such as field cameras or pitfall traps; only binocular visual observations). |
| 48. No special-status species was confirmed at any Site, and no individual, burrow, scat, track, nest, or other sign was documented prior to or after delivery of material. | Smith Decl., **Ex. 12**, Chow Dep. at 100:25–101:3, 106:8–22<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 1, 12, 14 (no confirmed detection of any individual, burrow, scat, track, nest, or other sign).<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 55:11–19 (only binocular visual observations; no direct detection methods). |
| 49. At three of the five Sites, the pre-disturbance baseline was previously disturbed agricultural land or dense non-native grassland dominated by invasive Russian thistle. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 19, 37, 55, 88 (previously disturbed agricultural land and non-native grassland baseline).<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 9, 11, 13 (disturbed agricultural land and dense non-native grassland dominated by invasive species); 11-12, 13-14 (inconclusive as to remaining sites). |

| | |
|---|---|
| 50. No complete pathway from a Site to a qualifying water of the United States has been identified, and the desert washes at any of the Sites are ephemeral and not perennial waters. | Smith Decl., **Ex. 20**, Expert Report of Adam H. Love, Ph.D. (Roux Associates) ("Love Report") at 36–38 (ephemeral washes do not drain to perennial waters; Plaintiffs have identified no complete pathway).<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 2.<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 55:20–56:2 (no jurisdictional-water delineation and no groundwater sampling), 67:19–68:4 (no field delineation of streams or drainages and no ordinary-high-water-mark assessment), 73:24–75:10 (no waters of the United States), 102:20–104:1 (reviewed no sediment or laboratory data and performed no water or sediment-transport modeling), 104:14–22 (could not say when any wash last flowed).<br><br>Smith Decl., **Ex. 12**, Lehong Chow Dep. (Sept. 8, 2026) at 292:25–293:2 (did not see Eller Slough at WPL because it was filled in; performed no assessment dig or sampling). |
| 51. Groundwater lies roughly 150–350-plus feet below ground at Three Points, Irwin, and Kern, over 500 feet at WPL, and roughly 77–106 feet at New West Tractor. | Smith Decl., **Ex. 20**, Love Report at 36–37 (groundwater-depth analysis).<br><br>Smith Decl., **Ex. 15**, Perez Report at 24 (Table 5-1) (corroborating Dr. Love).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 132:23-133:22. |
| 52. Thick vadose zones, low precipitation, and stable well chemistry further undercut present migration. | Smith Decl., **Ex. 20**, Love Report at 36-37.<br><br>Smith Decl., **Ex. 33**, Love Rebuttal at 11-15. |
| 53. Perez did not sample groundwater or surface water and did not perform a fate-and-transport analysis for a groundwater or drinking-water pathway. | Smith Decl., **Ex. 15**, Perez Report at 13-14 (Opinions 3–4)<br><br>Smith Decl., **Ex. 13**, Deposition of Rene Perez ("Perez Dep.") at 130:2–132:22, 134:17–145:24 (collected no vadose-zone, groundwater, or residential-well samples).<br><br>Smith Decl., **Ex. 33**, Expert Rebuttal Report of Adam H. Love, Ph.D. (Roux Associates) ("Love Rebuttal") at 11-15 (no completed water-migration pathway).<br><br>Smith Decl., **Ex. 17**, Cain Rebuttal at 17–18 (no groundwater or drinking-water pathway |

| | |
|---|---|
| | analysis). |
| 54. Perez performed no fate-and-transport calculation and did not establish when or at what concentration any constituent would reach groundwater. | Smith Decl., **Ex. 13**, Perez Dep. at 132:6-22 ("Q: You can't tell me today at what concentration, if at all, it would get to groundwater, could you? A: No."), 135:15–19 ("Q: You haven't performed any fate and transport study, have you? A: No. Q: You haven't done a fate and transport model? A: No."), 149:8-11 ("Q: You haven't done any quantification of any mass or concentration of contaminants being transported off of any of the sites? A: No.").<br><br>Smith Decl., **Ex. 15**, Perez Report at 13-14 (Opinions 3–4) (no fate-and-transport calculation establishing timing or concentration at groundwater).<br><br>Smith Decl., **Ex. 33**, Love Rebuttal at 11-15 (no completed water-migration pathway).<br><br>Smith Decl., **Ex. 17**, Cain Rebuttal at 17–18 (no groundwater or drinking-water pathway calculation). |
| 55. The July 6, 2024 fire at the Three Points Site, referred to as the Veronica Fire, was not shown to have been caused by spontaneous combustion. | Smith Decl., **Ex. 29**, LAC-FD000015 (no cause determined; indicating fire spread to mulch)<br><br>Smith Decl., **Ex. 30**, LAC-FD000005 ("Brush or brush-and-grass mixture fire")<br><br>Smith Decl., **Ex. 4**, Irwin Dep. I at 105:4–5 (speculation that children on an ATV may have ignited the fire).<br><br>Smith Decl., **Ex. 10**, Shin Dep. at 92:15–23 ("What I heard from Sanchez was that somebody throw a tire the corner, small amount or whatever, such that fire started right there. That's what Sanchez told me about.").<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 155:21–156:19 (other causes could have caused the Three Points fire). |
| 56. There is no evidence of internal heating in the burn scar at Three Points. | Smith Decl., **Ex. 34**, Darby Report § 6.1.2 (Tetra Tech found no internal heating in the burn scar).<br><br>Smith Decl., **Ex. 21**, Darby Rebuttal at §§ 2.1–2.3, 6.1.2. |

| | |
|---|---|
| | Smith Decl., **Ex. 4**, Irwin Dep. I at 105:1–5. |
| 57. Perez did not perform a site-specific analysis of the likelihood of a fire to occur or assess the risk to any receptors due to smoke exposure. | Smith Decl., **Ex. 15**, Perez Report at 14-15, 62-64.<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 152:14–159:23, 161:21-24; 162:22-163:1 (performed no air dispersion modeling; outside expertise), 203:5–207:15.<br><br>Smith Decl., **Ex. 34**, Darby Report Secs. 5.3–5.4, 8.2–8.4, 9.1–9.5.<br><br>Smith Decl., **Ex. 21**, Darby Rebuttal §§ 2.1–2.3.<br><br>Smith Decl., **Ex. 23**, Brown Interrog. Resp. at 18.<br><br>Smith Decl., **Ex. 25**, Mroz Interrog. Resp. at 18. |
| 58. Darby measured shallow material depths and low moisture content, found spontaneous combustion unlikely, and observed no active self-heating, smoldering, or combustion; Plaintiffs performed no comparable fire or self-heating analysis. | Smith Decl., **Ex. 34**, Darby Report §§ 5.3–5.4, 8.2–8.4, 9.1–9.5 (shallow mulch, low measured moisture, and no active self-heating or combustion).<br><br>Smith Decl., **Ex. 21**, Darby Rebuttal at §§ 2.1–2.3. |
| 59. Darby reported measured moisture of approximately 2–10 percent, concluded that spontaneous combustion was unlikely, and observed no active self-heating, smoldering, or combustion. | Smith Decl., **Ex. 34**, Darby Report §§ 5.3–5.4, 8.2–8.4, 9.1–9.5 (measured moisture, unlikely spontaneous combustion, and no active self-heating or combustion). |
| 60. Plaintiffs' reported metal concentrations in the land-applied material were below Title 22 TTLC thresholds. | Smith Decl., **Ex. 15**, Perez Report at 42-43, 74 (reported concentrations below Title 22 TTLC hazardous-waste thresholds).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 85:16–86:16 (sampled only the land-applied material). |
| 61. Perez only collected and characterized four samples of the land-applied material itself at WPL and Kern sites, six at Irwin, eight at Three Points, and none at New West Tractor. | Smith Decl., **Ex. 15**, Perez Report at 32, 35, 39, 45,<br><br>Smith Decl., **Ex. 35**, Perez Rebuttal at 18. |
| 62. Perez sampled and characterized only the land-applied material, not the native soil beneath it at the Sites or Plaintiffs' properties. | Smith Decl., **Ex. 33**, Love Rebuttal at 13–15 (Perez's samples addressed land-applied material, not native soil). |

| | |
|---|---|
| | Smith Decl., **Ex. 13**, Perez Dep. at 53:21–23, 85:16–86:16 (did not test the native soils beneath the land-applied material).<br><br>Smith Decl., **Ex. 17**, Cain Rebuttal at 17–18 (sampling did not establish impacts to native soil or Plaintiffs' properties). |
| 63. The samples Perez collected were not representative of the parcels. | Smith Decl., **Ex. 13**, Perez Dep. at 56:8-25; 93:9-94:20; 121:25-122:2. |
| 64. Some constituents, such as lead and PFAS, were detected in a couple of Perez's samples above screening levels for soils but Perez considers the screening levels as "reference points for identifying constituents of concern," not as thresholds of serious harm. | Smith Decl., **Ex. 15**, Perez Report at 14–15, 28, 42.<br><br>Smith Decl., **Ex. 35**, Perez Rebuttal at 20–21, 24.<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 111:3-14; 114:4-21; 119:24–120:21. |
| 65. Perez asserts one future pathway may be crops or agriculture. | Smith Decl., **Ex. 13**, Perez Dep. at 114:12–116:3. |
| 66. No source-specific ambient-air monitoring has been conducted to tie any constituent from a Site to a receptor at a harmful dose or level of exposure risk. | Smith Decl., **Ex. 16**, Sturtz Report at 10–20 (no source-specific ambient-air monitoring).<br><br>Smith Decl., **Ex. 36**, Cain Report at 19–20 (no credible source-specific exposure pathway).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 162:1–165:2 (took no air samples and did not quantify receptor exposure). |
| 67. Perez did not perform a receptor-specific risk assessment quantifying dose or exposure for any air pathway. | Smith Decl., **Ex. 15**, Perez Report at 63-64 (no receptor-specific risk assessment quantifying dose or exposure for any air pathway).<br><br>Smith Decl., **Ex. 36**, Cain Report at 19–20 (no receptor-specific dose analysis).<br><br>Smith Decl., **Ex. 16,** Sturtz Report at 10–20 (no source-specific air monitoring or dose analysis).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 162:1–165:2 (no air-dispersion modeling; no quantified receptor exposure; no wind-direction assessment). |
| 68. Perez performed no fate-and-transport calculations, took no groundwater or surface-water samples, | Smith Decl., **Ex. 15**, Perez Report at 14 (Opinions 3–4) (no fate-and-transport calculations or groundwater or surface-water |

| | |
|---|---|
| and quantified no receptor-specific risk for a drinking-water pathway. | samples).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 130:2–145:21 (no groundwater/vadose samples; no fate-and-transport or groundwater modeling; no mass, distribution-coefficient, or retardation calculations).<br><br>Smith Decl., **Ex. 33**, Love Rebuttal at 11, 14-15 (no completed water-migration pathway).<br><br>Smith Decl., **Ex. 17**, Cain Rebuttal at 17–18 (no receptor-specific drinking-water dose). |
| 69. Chow and Dalby used CNDDB five-mile-buffer and generic habitat descriptions for potential-to-occur rankings. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 8, 10-11 (potential-to-occur rankings).<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 5–8 (generic habitat descriptions and deferred testing).<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 102:20–103:4 (reviewed no laboratory or analytical data). |
| 70. Chow has not done toxicological testing; testing was deferred. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 31, 46, 58, 72, 91. |
| 71. Chow concedes that a habitat assessment only decides whether a survey is warranted and presence cannot be established without a survey. | Smith Decl., **Ex. 12**, Chow Dep. at 61:23–63:12. |
| 72. Chow and Dalby performed no population-level analysis of whether any alleged habitat loss would reduce a local population below self-sustaining levels. | Smith Decl., **Ex. 19**, Gregory C. Ainsworth, Ainsworth Rebuttal at 9–16 (no population-level analysis). |
| 73. Chow's opinion is conditional on future species presence and future testing, not a present receptor-specific threat. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 3.<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 5–8, 15–16.<br><br>Smith Decl., **Ex. 12**, Chow Dep. at 97:1-15. |
| 74. The jurisdictional-waters showing was insufficient since it rests on the USGS 3D Hydrography desktop layer rather than a field delineation. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 3, 4 (USGS 3D Hydrography desktop layer).<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 67:19–68:1 (no field delineation or ordinary-high-water-mark assessment), 72:18-25, 76:4–15.<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 2, 10–13, 16–17. |

| | |
|---|---|
| | Smith Decl., **Ex. 17**, Cain Rebuttal at 26. |
| 75. While permanent waters are not present on the Site, Dalby points to potential impacts to possible ephemeral (i.e. dry) streams that "may" be protected in California. | Smith Decl., **Ex. 18**, Chow/Dalby at p. 12-13. |
| 76. Chow/Dalby do not identify any present pathway or when material will reach a receptor through jurisdictional waters. | Smith Decl., **Ex. 18**, Chow/Dalby Report at 3.<br><br>Smith Decl., **Ex. 11**, Dalby Dep. at 55:20–56:16 (no jurisdictional waters identified), 92:7–12 (no drainages identified), 102:20–103:18 (no sediment samples reviewed), 104:14-25.<br><br>Smith Decl., **Ex. 12**, Chow Dep. at 255:10–22 (unnamed stream not observed during visit to Three Points), 268:1–10 (Eller Slough at WPL not observed during visit), 292:25–293:2 (did not see Eller Slough at WPL; performed no assessment dig or sampling).<br><br>Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 2, 14-15. |
| 77. The purported Kern streams could not be located. | Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 2, 11. |
| 78. New West Tractor hydrology was not confirmed. | Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 2, 12. |
| 79. Plaintiffs performed no soil sampling or groundwater monitoring supporting the asserted infiltration theory. | Smith Decl., **Ex. 19**, Ainsworth Rebuttal at 10-16 (no soil sampling or groundwater monitoring supporting infiltration).<br><br>Smith Decl., **Ex. 17**, Cain Rebuttal at 18–19 (no groundwater monitoring or infiltration support).<br><br>Smith Decl., **Ex. 13**, Perez Dep. at 130:2–132:22, 139:17–23 (no site-specific soil or groundwater sampling; assumed subsurface lithology). |
| 80. Dalby did not visit any site and relied on Chow's observations. | Smith Decl., **Ex. 12**, Chow Dep. at 293:16-18.<br><br>Smith Decl., **Ex. 18**, Chow/Dalby Report at 3-4 (indicating that Ms. Dalby is responsible for the opinions related to jurisdictional water impacts and remediation). |

Dated: September 18, 2026

MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Peter R. Duchesneau*
Peter R. Duchesneau
*Attorneys for Defendants*
ARAKELIAN ENTERPRISES, INC.
DBA ATHENS SERVICES and
ATHENS DISPOSAL COMPANY, INC.